# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-2892

———————

United States of America,

                Appellee,

        v.

Victor C. Harris,

                Appellant.

\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   District of Nebraska.
\*
\*
\*

———————

Submitted: January 10, 2007
Filed: July 9, 2007

———————

Before COLLOTON, BRIGHT, and GRUENDER, Circuit Judges.

———————

COLLOTON, Circuit Judge.

A jury convicted Victor Harris of conspiring to distribute and possessing with the intent to distribute fifty grams or more of crack cocaine. The district court[1] sentenced him to a term of 292 months' imprisonment. Harris appeals, and we affirm.

_____

[1] The Honorable Richard G. Kopf, United States District Judge, District of Nebraska.

I.

The case against Harris was based in part on evidence of a controlled drug transaction between Harris and a woman named Idella Bradley, who was cooperating with the Lincoln, Nebraska, Police Department. In August 2003, Bradley identified Harris as a person from whom she could purchase crack cocaine. Police equipped her with a recording device, provided her with money, and took her to an apartment in Lincoln for the purpose of purchasing drugs. Bradley returned from the apartment with two "rocks" of crack cocaine, weighing .39 grams and .31 grams, respectively.

At trial in February 2006, Bradley was unable to identify the person from whom she purchased the crack cocaine in August 2003. She testified that since then, she had suffered physical trauma that resulted in memory loss. As a result, the government presented testimony from one Damario Waters, who said he was familiar with Harris's voice based on a nine-year relationship, and that he could identify Harris's voice on the tape recording of the drug transaction with Bradley.

Apart from Bradley, several prosecution witnesses testified that they conducted crack cocaine transactions with Harris between 2001 and 2003. Two witnesses also described conversations with Harris after his arrest in which he admitted that he had been set up in a controlled buy with Bradley. Another witness, Harold Stewart, reported that Harris had attempted to trade him guns for drugs. He testified that Harris showed him two handguns and an assault-type rifle and proposed to trade them to Stewart for one-half ounce of crack cocaine.

Harris was arrested in September 2004 and transported to jail in the rear of a police cruiser. After Harris was removed from the cruiser, an officer located a sock containing 2.66 grams of crack cocaine underneath the driver's seat. The officer alerted another officer to check Harris's socks, and police discovered that Harris was then wearing only one sock.

A jury convicted Harris of conspiring to distribute more than 50 grams of crack cocaine. At sentencing, the district court increased Harris's offense level under the advisory sentencing guidelines based on Stewart's testimony that Harris possessed a dangerous weapon. *See* USSG § 2D1.1(b)(1). The court sentenced Harris to 292 months' imprisonment, and a five-year term of supervised release. [S. Tr. 129].

II.

Harris argues that the crack cocaine recovered from Bradley after the controlled transaction should not have been admitted into evidence, because Bradley was unable to recall the identity of the person who provided the drugs. He says that because the government had not established that he was the supplier of the drugs, the physical evidence was not "relevant." *See* Fed. R. Evid. 401, 402. Harris objected to the admission of the crack cocaine when it was offered, and we review the district court's admission of the evidence for abuse of discretion. *United States v. McAtee*, 481 F.3d 1099, 1103 (8th Cir. 2007).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Here, the government presented an audio recording of Bradley's encounter with a drug supplier, and testimony from Domario Waters that he recognized Harris's voice on the recording. The statements attributed to Harris could reasonably be construed as statements of a person selling drugs to Bradley, and Bradley emerged from the meeting carrying crack cocaine. If the jury believed the government's evidence, it could infer that Harris supplied the crack cocaine to Bradley, and the crack cocaine was therefore clearly relevant. Waters's testimony was a proper means of identification, Fed. R. Evid. 901(b)(5), and arguments about the accuracy of the identification go to the weight of the evidence, not to its relevance, or the relevance of the drug evidence admitted based on the identification. *See United States v.*

*Cerone*, 830 F.2d 938, 949 (8th Cir. 1987). The district court thus did not err in admitting the crack cocaine into evidence.

Harris also claims there was insufficient evidence to support the jury's finding that he conspired to distribute or possess with intent to distribute crack cocaine. "When reviewing the sufficiency of the evidence to support a conspiracy conviction, we will affirm if the record, viewed most favorably to the government, contains substantial evidence supporting the jury's verdict, which means evidence sufficient to prove the elements of the crime beyond a reasonable doubt." *United States v. Lopez*, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc), *cert. denied* 127 S. Ct. 214 (2006) (citations omitted). The elements of a drug conspiracy are that two or more persons reached an agreement to distribute or possess with intent to distribute a controlled substance, that the defendant voluntarily and intentionally joined the agreement, and that at the time that he joined the agreement, he knew its essential purpose. *See United States v. Sherman*, 440 F.3d 982, 990 (8th Cir. 2006).

In this case, the government presented nine witnesses who testified about their ongoing drug dealings with Harris. The evidence included testimony that Harris purchased crack cocaine in quantities large enough for resale, and that he did so from at least one supplier on an ongoing basis. (T. Tr. at 282-288). There was also evidence that Harris sold crack cocaine to a drug dealer, who resold the cocaine and returned to Harris to purchase more drugs with the proceeds. (T. Tr. at 685-695). This evidence is sufficient to support a finding of conspiracy to distribute. *E.g.*, *United States v. Brown*, 414 F.3d 976, 977 (8th Cir. 2005); *United States v. Fellers*, 285 F.3d 721, 725 (8th Cir. 2002), *rev'd on other grounds*, 540 U.S. 519 (2004). Harris's continuing relationships with multiple drug traffickers and users are distinguishable from a single, isolated sales agreement that falls short of conspiracy. *See United States v. Wiggins*, 104 F.3d 174, 177 (8th Cir. 1997).

With respect to his sentence, Harris argues that the district court clearly erred by applying a specific offense characteristic for possession of a dangerous weapon. He contends that Stewart's uncorroborated testimony about a proposed guns-for-drugs transaction was insufficient to support this finding. We review the district court's finding of the specific offense characteristic for clear error. *United States v. Torres*, 409 F.3d 1000, 1003 (8th Cir. 2005). A sentencing court should apply the enhancement if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. USSG § 2D1.1(b)(1) & comment. (n.3).

Referring to Stewart's testimony, the district court remarked that "the evidence was pretty clear at trial," and that "unless there's really strong reason to disbelieve a witness who testified under oath and was subjected to cross-examination, . . . the gun enhancement ought to apply." (S. Tr. at 87-88). The court engaged in a lengthy colloquy with counsel about Stewart's credibility, and then found expressly that "the government has proven by the greater weight of the evidence that there was . . . more than one firearm that was involved in this matter." (S. Tr. at 102). The district court observed Stewart testify at trial, and the court's assessment of witness credibility is virtually unassailable on appeal. *United States v. Watson*, 479 F.3d 607, 611 (8th Cir. 2007). We conclude that the application of the specific offense characteristic for possession of a dangerous weapon was not clearly erroneous.

Finally, Harris argues that his sentence is unreasonable with regard to 18 U.S.C. § 3553(a). In particular, he believes the sentencing court failed to abide by the requirement that a sentence be "sufficient, but not greater than necessary" to comply with the purposes of § 3553(a)(2), and that the court failed to take into account his personal circumstances.

The advisory guideline range for Harris was 292 - 365 months' imprisonment, based on an offense level 38 and a criminal history category III. Where, as here, the sentence imposed is within the advisory guideline range, we accord it a presumption

of reasonableness.  *Rita v. United States*, No. 06-5754, 2007 WL 1772146, at *6 (U.S. June 21, 2007); *United States v. Lincoln*, 413 F.3d 716, 717 (8th Cir. 2005).  That the Sentencing Commission and the district court both believed that Harris's sentence of 292 months' imprisonment was appropriate makes it likely that the sentence is reasonable in "the mine run of cases," and that it reflects the "not greater than necessary" requirement of § 3553(a)(2).  *Rita*, 2007 WL 1772146, at *8.

At sentencing, Harris presented evidence of limited intellectual functioning and a psychiatric disorder, which led his expert witness to opine that the longer Harris is incarcerated, the more difficult it will be for him "to adapt to the rest of the world where outcomes are less predictable and under less control."  (S. Tr. at 34).  The district court considered this evidence, but concluded that Harris's condition did not make him "terribly unusual."  (S. Tr. at 124).  The court exercised its discretion to follow the recommendation of the Sentencing Commission that mental and emotional conditions are not ordinarily relevant in determining whether a departure is warranted, *see* USSG § 5H1.3, and declined to vary from the advisory guidelines applicable to offenders with Harris's offense level and criminal history.

In sum, the district court concluded that the sentence of 292 months' imprisonment was appropriate "[t]o reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment, and to afford deterrence."  (S. Tr. at 129).  The court also recommended "in the strongest possible terms" that Harris receive vocational educational support while incarcerated. (*Id.*).  There is no evidence that the court ignored factors that it should have considered or relied upon impermissible factors.  The district court recognized that it had discretion to vary from the advisory guidelines, but elected to sentence within the recommended range.  There is nothing in the record to persuade us that both the work of the Sentencing

Commission and the discretionary judgment of the district court have arrived at an unreasonable sentence in this case.

$$* \qquad * \qquad *$$

For these reasons, the judgment of the district court is affirmed.

_____