# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3093

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Jason Schmidt, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 15, 2009
Filed: July 2, 2009

_____

Before RILEY, SMITH, and COLLOTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Jason Schmidt (Schmidt) was charged with being a felon in possession of a firearm and ammunition. The district court[1] found Schmidt guilty beyond a reasonable doubt and sentenced Schmidt to 51 months imprisonment, three years supervised release, and a $6,000 fine. Schmidt now appeals challenging the district court's jurisdiction and Schmidt's sentence. We affirm.

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

## I.    BACKGROUND

On January 2, 2007, in Marengo, Iowa, an Iowa County Sheriff's Deputy observed Schmidt driving a pickup truck. The Deputy, who knew Schmidt had a suspended driver's license, pulled Schmidt over into a store parking lot. Schmidt exited his vehicle and approached the Deputy's patrol car. The Deputy asked Schmidt to get inside the patrol car, and then asked Schmidt for permission to search Schmidt's vehicle. Schmidt indicated the vehicle was not his, and claimed he could not consent to a search of the vehicle. The Deputy asked Schmidt if he had insurance for the vehicle and Schmidt indicated he did not believe so. Schmidt was cited for the state offenses of driving while his license was denied and driving without insurance.

The truck was impounded and towed. During an inventory search of the vehicle, a gun case containing a 12-gauge shotgun was found on the backseat floor of the pickup's extended cab. Schmidt's hunting vest was located behind a child's seat in the front right passenger seat. In the vest, deputies discovered thirteen 12-gauge shotgun shells. Deputies also found four rounds of .223 rifle ammunition in the pickup's center console. Later that day, Schmidt was arrested and charged with possession of a firearm as a felon in Iowa County, Iowa. On May 3, 2007, Schmidt pled guilty in state court to the possession charge. Schmidt was sentenced to a suspended five-year term of imprisonment and placed on a three-year term of probation.

On August 28, 2007, Schmidt was indicted for the same offense conduct in the United States District Court for the Northern District of Iowa. Schmidt was charged with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). During a bench trial, Schmidt stipulated he had previously been convicted of a felony, and he knowingly possessed a firearm and ammunition on January 2, 2007, in the Northern District of Iowa. However, Schmidt challenged the federal court's jurisdiction, claiming his offense did

not involve interstate commerce, because the shotgun was not possessed in and did not significantly affect interstate commerce.

At trial, Special Agent Timothy Hunt (Agent Hunt) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), testified the 12-gauge shotgun Schmidt admittedly possessed was manufactured in Belgium around 1951and had to travel in interstate commerce before it came into Schmidt's possession. Agent Hunt also testified the thirteen rounds of 12-gauge shotgun shells were manufactured by Remington in either Connecticut or Arkansas, and the four rounds of .223 ammunition were manufactured by the Lake City Army Ammunition Plant in Missouri for use by NATO militaries. Agent Hunt explained the ammunition Schmidt admittedly possessed would have had to travel in interstate commerce before Schmidt's possession of the ammunition. The district court decided the firearm and ammunition "were transported across a state line before the defendant possessed the firearm or the two types of ammunition," and found Schmidt guilty beyond a reasonable doubt. Schmidt was sentenced at the top of his advisory United States Sentencing Guidelines (U.S.S.G. or Guidelines) range to 51 months imprisonment.

Schmidt appeals, claiming the district court erred in finding the shotgun and ammunition in Schmidt's possession were in or affected interstate commerce. Schmidt asserts, because his possession of the shotgun did not affect interstate commerce, federal court jurisdiction was lacking and the district court should have granted his motion in arrest of judgment. Schmidt also claims his sentence is unreasonable because it is greater than necessary to satisfy the purposes of 18 U.S.C. § 3553(a)(2).

## II.   DISCUSSION
### A.   Interstate Commerce
Schmidt admits that on January 2, 2007, he was in possession of a firearm and ammunition having previously traveled in interstate commerce to Iowa, and he had

previously been convicted of a felony. Schmidt contends the shotgun he possessed is a family keepsake, which was purchased by Schmidt's grandfather in the 1950's, used solely by Schmidt's family for hunting purposes, and had not been outside the state of Iowa since at least 1974, when Schmidt's father inherited the firearm. As a result, Schmidt maintains the district court did not have jurisdiction over his offense because the firearm was not possessed in, and did not affect, interstate commerce.

The district court had subject matter jurisdiction under 18 U.S.C. § 3231. The crux of Schmidt's claim is the federal government does not have constitutional authority to penalize Schmidt's conduct because his possession of the shotgun was not sufficiently linked to interstate commerce. "We review federal constitutional questions de novo." United States v. Johnson, 56 F.3d 947, 953 (8th Cir. 1995) (citation omitted.)

To support his position, Schmidt cites United States v. Lopez, 514 U.S. 549, 551, 567 (1995), in which the United States Supreme Court decided 18 U.S.C. § 922(q), a federal statute prohibiting the knowing possession of a firearm in a school zone, was unconstitutional because the statute did not have "any concrete tie to interstate commerce." However, Lopez is inapposite to the present case because 18 U.S.C. § 922(g)(1) is structured differently from § 922(q). This court has repeatedly held § 922(g)(1), the statute under which Schmidt was convicted, is expressly tied to interstate commerce. See, e.g., United States v. Shelton, 66 F.3d 991, 992 (8th Cir. 1995) (per curiam) (quoting United States v. Rankin, 64 F.3d 338, 339 (8th Cir. 1995) (per curiam)). This is because "section 922(g) contains an interstate commerce element—that the firearms in question must have been shipped, transported, or possessed 'in or affecting' interstate commerce—which in turn 'ensure[s], through case-by-case inquiry, that the firearm possession in question affects interstate commerce." Id. at 992 (quoting Lopez, 514 U.S. at 561). See also United States v. Stuckey, 255 F.3d 528, 530 (8th Cir. 2001) (confirming the constitutionality of 18 U.S.C. § 922(g), because the statute "only regulates those weapons affecting interstate

commerce by being the subject of interstate trade") (quoting United States v. Dorris, 236 F.3d 582, 586 (10th Cir. 2000)).

In Scarborough v. United States, 431 U.S. 563, 572 (1977) (quoting 114 Cong. Rec. 14773 (1968) (construing 18 U.S.C. § 1202(a), the predecessor to 18 U.S.C. § 922(g))), the Supreme Court explained Congress' purpose in drafting a federal statute prohibiting felons from possessing firearms was "to keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" To achieve this purpose, the Court held, Congress intended only to require "the minimal nexus that the firearm have been, at some time, in interstate commerce." Id. at 575. See also Shelton, 66 F.3d at 992.

ATF Agent Hunt testified he received training involving the identification of firearms. Agent Hunt then explained, without any challenge from Schmidt, the shotgun Schmidt possessed was manufactured in Belgium, the 12-gauge shotgun shells were manufactured in either Connecticut or Arkansas, and the .223 ammunition was manufactured in Missouri.

Schmidt contends the facts of his case are unique from other Eighth Circuit cases because over thirty years had passed since the shotgun had traveled in interstate commerce. Schmidt's argument ignores the existence of the ammunition, which was manufactured outside Iowa and traveled in interstate commerce before it was found in Schmidt's possession. Schmidt does not assert too much time had passed since the ammunition was purchased to defeat the district court's finding the ammunition had a sufficient nexus with interstate commerce.

In United States v. Abernathy, 277 F.3d 1048, 1050 (8th Cir. 2002), this court concluded evidence a shotgun had been manufactured in Massachusetts and purchased through Sears Roebuck in 1946 or 1947 before coming into the felon-defendant's possession **in Missouri was sufficient to demonstrate the shotgun was used in and**

affected interstate commerce. Likewise, Schmidt's possession of a shotgun manufactured in Belgium, and ammunition manufactured in Missouri and either Connecticut or Arkansas, is sufficient to satisfy § 922(g)(1)'s required nexus to interstate commerce.

Schmidt further attempts to distinguish his case from other cases by arguing the government imposed a higher evidentiary burden upon itself when the government alleged in the indictment that Schmidt "knowingly possessed [the firearm] in *and* affecting commerce," instead of alleging the possession was in *or* affecting commerce. While § 922(g) only requires proof of either possession in commerce or possession affecting commerce, Schmidt claims the language in the indictment required the government to prove both. Rules of federal pleading require indictments to charge in the conjunctive, using the term "and," even when the statute is drafted in the disjunctive, using the term "or." See United States v. Vickerage, 921 F.2d 143, 147 (8th Cir. 1990). "Proof of any one of the violations charged conjunctively in the indictment will generally sustain a conviction." Id. (citing United States v. McGinnis, 783 F.2d 755, 757 (8th Cir. 1986)). Thus, the government was not required to satisfy a higher evidentiary burden in Schmidt's case.

### B.    Unreasonable Sentence

Schmidt insists his sentence of 51 months imprisonment was greater than necessary to promote the goals of 18 U.S.C. § 3553(a)(2), and is therefore unreasonable. Schmidt argues he should have been sentenced to probation because Schmidt (1) had primary custody of his daughter, (2) was responsible for farming the family farm, (3) possessed the firearm and ammunition solely for hunting, (4) performed well on pretrial supervision, and (5) was prosecuted in state district court for the same offense and was given a suspended prison sentence.

Appellate courts must review sentences using an abuse of discretion standard. Gall v. United States, 552 U.S. 38, ___, 128 S. Ct. 586, 597 (2007). We "must first

ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Id. If the sentence is procedurally sound, we "then consider the substantive reasonableness of the sentence imposed." Id.

"A district court's first step in sentencing proceedings is to correctly calculate the defendant's Guidelines range." United States v. Hernandez, 518 F.3d 613, 616 (8th Cir. 2008) (citing Gall, 128 S. Ct. at 596). "'[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.'" Id. (quoting Gall, 128 S. Ct. at 596). Next, "the district court 'must make an individualized assessment' of the case 'based on the facts presented.'" Id. (quoting Gall, 128 S. Ct. at 596).

The district court accurately calculated Schmidt's advisory Guidelines range and provided Schmidt with an opportunity to argue for his desired sentence. Based upon Schmidt's adjusted offense level of 18, after a two level downward departure for acceptance of responsibility, with a criminal history category IV, Schmidt's advisory Guidelines range was 41 to 51 months imprisonment. Schmidt presented each of his arguments to the district court, and the district court declined to find Schmidt's reasons justified a significant downward variance or Schmidt's requested sentence of probation.

The court then considered each of the § 3553(a) factors and determined, based upon the facts before it, that a sentence of 51 months was appropriate. In considering Schmidt's history and characteristics, the court noted Schmidt (1) is 36 years old and has a tenth grade education; (2) has a lengthy criminal history, including some older crimes which were not scored under the advisory Guidelines; (3) has been in trouble

with the law for most of his life; (4) has committed multiple offenses, including two burglaries which were scored under the Guidelines and are considered crimes of violence; (5) has one daughter and shares custody of his child with the child's mother; (6) has had alcohol problems in the past; and (7) is self-employed on the family farm where Schmidt's father and brother also farm. The sentencing court explained, "The Court finds no reason to vary from the advisory guideline sentence after doing an individualized assessment of the defendant and his case. I will be imposing a guideline sentence, but the sentence will be no greater than necessary to achieve the goals of sentencing."

The district court decided to impose a sentence at the top of Schmidt's Guidelines range. The district court explained the acceptance of responsibility **adjustment was** "a close call," and the primary reason for sentencing Schmidt at the top of his Guidelines range was due to Schmidt's "long and serious criminal history and the likelihood of recidivism." The court emphasized Schmidt's "lenient treatment in the State courts," and his failure to respond to the lenient sentences with lawful behavior. Additionally, the district court found Schmidt was not forthcoming with his financial information, which made it difficult for the district court to make an accurate assessment of Schmidt's financial condition before imposing a fine.

"Where, as here, the sentence imposed is within the advisory guideline range, we accord it a presumption of reasonableness." United States v. Harris, 493 F.3d 928, 932 (8th Cir. 2007) (citing Rita v. United States, 551 U.S. 338, ___, 127 S. Ct. 2456, 2462-63 (2007); United States v. Lincoln, 413 F.3d 716, 717 (8th Cir. 2005)). Schmidt has failed to rebut this presumption. Although Schmidt alleges his sentence is unreasonable and sets forth several reasons he should have received a sentence of probation, the sentencing judge listened, considered, and imposed a sentence taking into account each of Schmidt's arguments. See United States v. Miles, 499 F.3d 906, 910 (8th Cir. 2007) (quoting Rita, 127 S. Ct. at 2469). The district court committed no procedural error, and the sentence is not substantively unreasonable.

## III. CONCLUSION

The district court's sentence and judgment are affirmed.

_____