COLLOTON, Circuit Judge.
Dana Deegan pled guilty pursuant to a plea agreement to second-degree murder, in violation of 18 U.S.C. §§ 1111 and 1153. The district court[1] sentenced Deegan to 121 months’ imprisonment, which was the bottom of the advisory guideline range. Deegan appeals the sentence, and we affirm.
I.
Deegan is a member of the Three Affiliated Tribes. On October 20,1998, Deegan secretly gave birth to a baby boy in the bathroom of her home on the Fort Bert-hold Indian Reservation. The baby was alive and breathing when he was delivered. Deegan had kept her pregnancy hidden, and no other adult was present at the time of the delivery. Deegan’s three other minor children were in the home, but they were unaware of the birth.
Approximately two hours after delivering her son, Deegan fed, cleaned, and dressed him, and then placed him in a basket. She then left the house with her three other children, intentionally leaving the baby alone without food, water, or a caregiver. Deegan did not return to her home for approximately two weeks. When she returned, she found the baby dead in the basket where she had left him. She put his remains in a suitcase, and deposited the suitcase in a rural ditch area near her residence.
On November 4,1999, a man working on a fence line found the suitcase containing the baby’s remains. He reported the discovery to law enforcement, and the Federal Bureau of Investigation (“FBI”) commenced an investigation. In March 2004, Deegan voluntarily submitted a DNA sample to the FBI. Nearly three years later, in February 2007, the FBI completed mitochondrial DNA analysis on the Deegan sample and confirmed that Deegan was the mother of the deceased baby. When Deegan was interviewed by the FBI in late February 2007, she falsely claimed that the baby was stillborn. Interviewed a second time in May 2007, Deegan repeated the false story and provided a written statement to that effect.
Later during the May 2007 interview, however, Deegan admitted that her earlier statements were false and acknowledged that the baby had been born alive. She stated that she intentionally left him alone in her home, knowing that he would die. When asked why she did so, Deegan re *628 sponded that she was unable to care for a fourth child, neither she nor her common-law husband were employed, and her husband spent what little money they did have to purchase drugs.
On June 6, 2007, a grand jury returned a two-count indictment charging Deegan with first-degree murder and making false statements to the FBI. Deegan pled not guilty to both charges. On November 11, 2007, Deegan entered into a written plea agreement with the government, in which she agreed to plead guilty to one count of second-degree murder. In the factual portion of the agreement, Deegan acknowledged that the baby was born alive and breathing when she delivered him, and that she unlawfully and with malice aforethought caused his death by leaving him alone in the house for approximately two weeks. On November 30, 2007, the government filed an information charging Deegan with second-degree murder.
On December 10, 2007, Deegan pled guilty to second-degree murder. At the plea hearing, the district court noted that the sentencing guidelines in effect at the time of Deegan’s offense provided for an advisory sentence of eight to ten years’ imprisonment for second-degree murder. The court advised Deegan that based on “what little information” it had about the offense at the plea hearing, the court was “not comfortable” with a range of eight to ten years, because the terms of imprisonment for other defendants convicted of second-degree murder “were not even close to that range.” The court remarked that there were a number of provisions in the advisory guidelines “that would justify an upward departure.”
In an order filed on January 22, 2008, the court formally notified the parties that it was “contemplating an upward departure from the applicable Sentencing Guideline range,” based on USSG § 5K2.8, which provides for an increased sentence where “the defendant’s conduct was unusually heinous, cruel, brutal, or degrading to the victim.” The court expressed its view that Deegan’s conduct “was unusually heinous, cruel, and brutal,” but stated that it would await review of the presentence investigation report (“PSR”), psychological evaluations, and a review of relevant case law before making a final decision on sentencing.
Applying the 1997 sentencing guidelines in effect at the time of the offense, the PSR recommended an advisory sentencing range of 121 to 151 months’ imprisonment, which corresponded to a total offense level of 32 and a criminal history category of I. The total offense level represented a base offense level of 33, USSG § 2A1.2 (1997), a two-level upward adjustment for knowledge of a vulnerable victim, id. § 3Al.l(b), and a three-level decrease for acceptance of responsibility, id. § 3El.l(a), (b). Deegan objected to the two-level vulnerable-victim adjustment, arguing that there had been no factual finding that the infant was vulnerable, and that she had not admitted as much in the plea agreement.
Following preparation of the PSR, both parties submitted sentencing memoranda to the court. Deegan again objected to the two-level vulnerable-victim adjustment. She also urged the court to vary from the advisory guidelines and sentence her to probation or to a very short period of incarceration. She based her argument for leniency on what she described as her “psychological and emotional condition” at the time of the offense, her history as a victim of abuse, and the fact that she acted impulsively, among other reasons.
As support, she submitted a report prepared by Dr. Phillip Resnick, an expert in “neonaticide.” “Neonaticide” is a term coined by Resnick to describe the killing of *629 an infant within the first twenty-four hours following birth. See Susan Hatters Friedman et al., Child Murder by Mothers: A Critical Analysis of the Current State of Knowledge and a Research Agenda, 162 Am. J. Psychiatry 1578, 1578 (2005). The report addressed what Resnick viewed as an “extraordinary number of mitigating circumstances,” and expressed the opinion that a prison sentence was not necessary to deter other women from committing neonaticide. The report concluded that Deegan suffered from an extensive history of abuse throughout her childhood and as an adult, suffered from major depression and dissociation at the time of the homicide, acted impulsively in leaving her baby alone, presented a very low risk of reoffending, and did not merit a lengthy prison sentence, especially because other women convicted in state court of committing similar offenses were usually sentenced to no more than three years in prison.
At the sentencing hearing on May 18, 2008, the district court adopted the sentencing guideline calculation in the PSR. The court agreed with the probation office that the vulnerable-victim enhancement was warranted, and that Deegan’s advisory range was 121 to 151 months’ imprisonment. Finally, after calling Dr. Resnick to testify about his report and hearing arguments from counsel and testimony from Deegan herself, the court sentenced Deegan to 121 months’ imprisonment.
On appeal, Deegan argues that the sentence of 121 months’ imprisonment is unreasonable, because the advisory guideline for second-degree murder is not based on empirical data and national experience, and because the sentence imposed is greater than necessary to comply with the statutory purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). As we understand Deegan’s brief on appeal, she argues that the district court committed both procedural and substantive errors when imposing sentence. Deegan raised no procedural objection in the district court, so we consider her claims of procedural error under the plain-error standard, United States v. Gray, 533 F.3d 942, 945 (8th Cir.2008), which requires as conditions for relief that Deegan show an obvious error that affected her substantial rights and seriously affected the fairness, integrity, or reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). No objection was required to preserve Deegan’s substantive claim that the sentence imposed is unreasonably long with regard to § 3553(a), United States v. Wiley, 509 F.3d 474, 476-77 (8th Cir.2007), but we review the substantive reasonableness of the sentence under a deferential abuse-of-discretion standard. Gall v. United States, 552 U.S. 38, 41, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).
II.
A.
Deegan appears to raise four alleged procedural errors at sentencing. One is that the district court “failed on the record to engage in any meaningful discussion whatsoever of the § 3553(a) factors.” The Supreme Court in Gall explained that a sentencing court “must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.” 552 U.S. at 50, 128 S.Ct. 586. Deegan did not object to the adequacy of the district court’s explanation or request any elaboration. On plain error review, we conclude that the explanation is not obviously inadequate.
As the Supreme Court has explained, “[t]he appropriateness of brevity or length, conciseness or detail, when to *630 write, what to say, depends upon circumstances.” Rita v. United States, 551 U.S. 338, 356, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). “The law leaves much, in this respect, to the judge’s own professional judgment.” Id. “[A] district court is not required to provide a ‘full opinion in every case,’ but must ‘set forth enough to satisfy the appellate court that he has considered the parties’ arguments and has a reasoned basis for exercising his own legal decision-making authority.’ ” United States v. Robinson, 516 F.3d 716, 718 (8th Cir.2008) (quoting Rita, 551 U.S. at 356, 127 S.Ct. 2456). Sentencing courts need not “categorically rehearse the § 3553(a) factors on the record, as long as it is clear that the court considered those factors.” United States v. Hernandez, 518 F.3d 613, 616 (8th Cir.2008). Nor have we required district courts to make specific findings on the record about each § 3553(a) factor. Perkins, 526 F.3d at 1110. “[A]ll that is generally required to satisfy the appellate court is evidence that the district court was aware of the relevant factors.” Id.
The district court in this case said plenty to avoid an obvious shortcoming under a plain error standard of review. The court twice stated that it had “carefully considered” the § 3553(a) factors, even remarking that it had “spent many, many days and nights thinking about this case.” The court listed nearly all of the § 3553(a) factors on the record. Dr. Resnick, the expert who reported on Deegan’s psychological condition, structured his testimony at the sentencing hearing around many of the § 3553(a) factors, and cross-examination highlighted other statutory factors. The court heard all of this testimony and took it into account. The court read Res-nick’s written report, which was explicit in its reference to the § 3553(a) factors, “at least three times.” The court twice stated that it had carefully reviewed the PSR, the parties’ sentencing memoranda, the psychological evaluation of Deegan by another doctor, the many letters of support filed on her behalf, and the DVD presentation by her family. See United States v. Henson, 550 F.3d 739, 743 (8th Cir.2008) (observing that the presentence report contains extensive information regarding the factors under § 3553(a)).
In explaining why it chose a sentence of 121 months’ imprisonment rather than a greater punishment, the court acknowledged that Deegan’s life had not been “easy,” and that it had been plagued with physical abuse and sexual abuse. Referring back to its statement at the plea hearing that it was likely to impose a sentence above the advisory range of eight to ten years, the court observed that Res-nick’s report and testimony were “helpful and insightful,” and that the court had gained “far better insight” into the ease after reviewing the report. The court told Deegan that it had “real compassion for [her] and [her] family and what [she had] gone through,” including the fact that she had three children and that her brother had been murdered. The court said that it “understood] why [Deegan] took the steps that she did in 1998,” and that “under the circumstances,” a sentence under the 2007 guidelines in effect at the time of sentencing, i.e., 19.5 to 24.5 years’ imprisonment, would not have been fair.
But the court also thought a lesser sentence would not be sufficient, explaining that it must “ensure that justice is done,” and that it could not “ignore the fact that there was an innocent life that was lost.” The court remarked that justice in this case probably “lies between the extremes of public opinion,” and that the advisory range of 121 to 151 months’ imprisonment was reasonable for “a case of this nature.”
This discussion is sufficient to permit meaningful appellate review and to ensure *631 the public that Deegan’s case was given fair consideration. In the face of this record, which shows a district judge deliberating at length over a difficult case, and even changing his tentative conclusion between the plea hearing and the sentencing hearing, we cannot agree with our dissenting colleague that the district court “exercised no discretion.” Post, at 659-60. Deegan has not established plain error that would require a remand for a more elaborate statement of reasons.
B.
Deegan also argues that the court procedurally erred by treating the advisory guidelines as mandatory. Gall, 552 U.S. at 51, 128 S.Ct. 586. This contention is based on an isolated statement by the district court at the sentencing hearing, to which Deegan lodged no objection:
In this case, the sentencing guidelines provide for a sentence range of 121 to 151 months. That’s 10 to 12-and-a-half years. Pm required to impose those guidelines that were in effect in October of 1998. If the guidelines that were in effect today were imposed, your sentence would be in the range of 19-and-a-half to 24-and-a-half years.
(S. Tr. at 60) (emphasis added).
The court evidently misspoke when it used the word “impose” (rather than “consider”), because the record as a whole makes clear that the court understood its discretion to sentence outside the advisory guideline range. There is no reason to believe that the district court applied the guidelines as mandatory, and if Deegan had objected at sentencing to the word “impose,” we are confident that the court would have corrected itself. Elsewhere, the court clearly explained that it was aware of its discretion to vary from the advisory guideline range:
I’m also familiar with the recent decisions from the United States Supreme Court in the cases of Gall and Kimbrough which have established that district court judges around the country in the federal system have discretion to impose nonguideline sentences or variances from the sentencing guidelines. And Pm equally aware of my authority and my discretion to impose a non-guideline sentence.
... Pm aware of my discretion and authority to impose a nonguideline sentence or to depart from the guidelines. I have chosen in this case to impose a guideline sentence. Pm not going to exercise my discretion and depart and impose a nonguideline sentence because I believe that the sentencing range that’s been provided for in the sentencing guidelines in this particular case is reasonable.
(S. Tr. 56, 58-59) (emphases added). On Deegan’s contention that the district court treated the guidelines as mandatory, there is no plain error warranting relief.[2]
C.
Deegan also contends that the district court committed procedural error by considering the advisory guideline range *632 that applied to Deegan’s offense under the 2007 sentencing guidelines. Deegan committed the offense in 1998, and the court calculated her advisory range according to the 1997 guidelines, which were in effect at the time of the offense. The court apparently followed the rule that application of the guidelines in effect at the time of sentencing would violate the Ex Post Facto Clause, see United States v. Bell, 991 F.2d 1445 (8th Cir.1993); USSG § lBl.ll(b), although the endurance of that rule is an open question in this circuit after United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), now that the guidelines are merely a starting point that a court must consult and take into account. See United States v. Anderson, 570 F.3d 1025, 1033 n. 7 (8th Cir.2009) (assuming, without deciding, that the Ex Post Facto Clause applies to a district court’s application of the sentencing guidelines after Booker); compare, e.g., United States v. Demaree, 459 F.3d 791, 795 (7th Cir.2006) (holding that use of the guidelines in effect at time of sentencing does not violate Ex Post Facto Clause after Booker), with United States v. Turner, 548 F.3d 1094, 1098-1101 (D.C.Cir.2008) (disagreeing with Demaree).
Although the court used the 1997 guidelines as the initial starting point, it also discussed the advisory range that would apply under the 2007 guidelines. The court observed that if Deegan had been sentenced under the 2007 guidelines, her advisory sentence would have been almost twice as long as the sentencing range under the 1997 guidelines. The court also noted that if Deegan had been convicted of voluntary manslaughter rather than second-degree murder, then her advisory range under the 2007 guidelines would be roughly the same range as the advisory range for second-degree murder under the 1997 guidelines. With this background, the court concluded:
I guess what I’m trying to say is that if we used guidelines today, the sentence would be double what you’re currently looking at, and I don’t think that’s fan-under the circumstances. But when I reflect upon what a voluntary manslaughter charge carries under the current guidelines and what second degree murder carries under the guidelines that existed in 1998, I believe that those are reasonable guidelines for a case of this nature.
Deegan did not object to the district court’s reference to the 2007 guidelines, and we see no obvious error in the court’s consideration of that information. Now that the guidelines are merely advisory, district courts are free to vary from the advisory range “based solely on policy considerations,” Kimbrough v. United States, 552 U.S. 85, 101, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (internal quotation omitted), or to sentence within the advisory range based on policy considerations. The 2007 guidelines simply represent another policy view — different from the view embodied in the 1997 guidelines — of the appropriate sentence under § 3553(a) for second-degree murder or voluntary manslaughter in a run-of-the-mine case. The court was free to consider that view as part of its analysis of the appropriate sentence for Deegan under § 3553(a). There was no plain procedural error.
D.
Deegan’s remaining procedural argument is that the district court erred by assuming that the advisory guideline for second-degree murder was the product of empirical data and national experience. She points to this excerpt from the district court’s comments at sentencing:
We have sentencing guidelines in the federal system that are designed to en *633 sure that sentences are consistent and uniform throughout the country for people that commit this type of crime with the same type of criminal history that you have. The sentencing guidelines have been in effect for almost 20 years, and they are designed to provide some honesty in sentencing and to achieve some consistency in the federal system, and they’re based upon an analysis of hundreds of thousands of cases. Every year there are hundreds of thousands of cases that — in which defendants are sentenced around the country, and the Sentencing Commission compiles all that data and they try to develop sentencing guidelines that are fair and are reasonable.
Deegan did not object to these comments at sentencing, and we see no obvious error that warrants relief.
Insofar as Deegan argues that the court procedurally erred by “selecting a sentence based on clearly erroneous facts,” see Gall, 552 U.S. at 51, 128 S.Ct. 586, we disagree. The court’s discussion of the guidelines was an accurate statement about the general purpose and methodology behind the sentencing guidelines. See generally USSG Ch. 1, Pt. A, intro, comment. The court never suggested that the Sentencing Commission based the guideline on an analysis of hundreds of thousands of “neonaticide” eases, or that Deegan’s offense was a typical fact pattern for second-degree murder.
The district court may have believed that the second-degree murder guideline considered in Deegan’s case was based on empirical data and national experience, but Deegan has not shown that this premise would have been incorrect. Citing United States v. Grant, No. 07-242, 2008 WL 2485610, at *4-5 (D.Neb. June 16, 2008), Deegan argues that amendments to the murder guidelines promulgated in 2002, 200i, 2006, and 2007 were not based on empirical data and national experience. But whatever the merits of that position, these amendments say nothing about how the Sentencing Commission established the 1997 guideline for second-degree murder, on which Deegan’s advisory range was based.[3]
Even with respect to the 1997 guideline, moreover, the district court simply treated the advisory guideline range as an initial starting point, while determining the final sentence after consideration of all of the § 3553(a) factors taken as a whole. There is no showing that an erroneous assumption about the underlying basis for the second-degree murder guideline drove the determination of Deegan’s sentence.
In sum, Deegan has not identified an obvious procedural error at sentencing. The district court correctly calculated the advisory guideline range, allowed the par *634 ties to present evidence and argument regarding the sentence to be imposed, recognized its discretion to impose a sentence outside the advisory range, considered all of the § 3553(a) factors, determined the final sentence based on those factors, and adequately explained its rationale.
III.
A.
We also conclude that Deegan’s sentence at the bottom of the advisory guideline range is substantively reasonable. We review the substantive reasonableness of the sentence under a deferential abuse-of-discretion standard, see Gall, 552 U.S. at 41, 128 S.Ct. 586, cognizant that “it will be the unusual ease when we reverse a district court sentence — whether within, above, or below the applicable Guidelines range — as substantively unreasonable.” United States v. Feemster, 572 F.3d 455, 464 (8th Cir.2009) (en banc) (internal quotation omitted). While many critics of the mandatory federal sentencing system believed that the guidelines resulted in excessive terms of imprisonment, the post-Booker system is not a one-way ratchet in favor of leniency. A district judge who favors a tough sentence is entitled to the same degree of deference as a district judge who opts for a lesser punishment.
Where, as here, a sentence imposed is within the advisory guideline range, we typically accord it a presumption of reasonableness. See United States v. Harris, 493 F.3d 928, 932 (8th Cir.2007). The presumption “simply recognizes the real-world circumstance that when the judge’s discretionary decision accords with the Commission’s view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable.” Rita, 551 U.S. at 350, 127 S.Ct. 2456. But even if we do not apply such a presumption here, on the view that Deegan’s offense is not a “mine run” second-degree murder, the district court did not abuse its considerable discretion by selecting a sentence of 121 months’ imprisonment.
The record in this case includes evidence in aggravation and mitigation. As the district court observed in its presentencing order, a court reasonably could view Deegan’s offense as “unusually heinous, cruel, and brutal,” and deserving of harsh punishment. She left a newborn baby alone in a basket in an empty house without food and water for two weeks until the child died. Deegan countered with testimony from an expert who believes, among other things, that women who commit “neonaticide” are unlikely to reoffend, and that harsh punishment of such an offender is unlikely to deter others from committing the same offense. Deegan also presented evidence of her troubled personal history and family circumstances, and of course we share our dissenting colleague’s condemnation of violence against American Indian women.
Deegan’s mitigating evidence convinced the district court that a sentence of more than ten years, which the court had contemplated at the time of the guilty plea, was greater than necessary to satisfy the statutory purposes of sentencing. But we are firm in our view that the district court did not abuse its discretion by refusing to impose a more lenient sentence. Whatever the deterrent effect of this sentence, general or specific, and whatever Deegan’s personal history, the court was entitled to consider the need for the sentence imposed to “reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.” 18 U.S.C. § 3553(a)(2)(A). The district court was justified in saying that it could not “ignore the fact that there was *635 an innocent life that was lost,” and that there was a “need to ensure that justice is done.” The court believed that justice in this case “lies between the extremes of public opinion,” and that may be so. There likely are those, like Deegan’s expert, who believe that a term of imprisonment is unnecessary, and there may be others who feel that no term of imprisonment is too long for one who murders a helpless infant in this manner. We need only determine whether the district court’s middle ground is a permissible choice. Applying a deferential abuse-of-discretion standard, we conclude that the sentence of 121 month’s imprisonment is reasonable •with regard to § 3553(a).
B.
Our dissenting colleague contends that Deegan’s sentence is unreasonably long, and that we should direct the district court to impose a shorter term of imprisonment. We believe that such a disposition would be inconsistent with the substantial deference now owed to the judgments of the sentencing courts. Cf. United States v. Burns, 577 F.3d 887, 896 (8th Cir.2009) (en banc) (Bright, J., concurring) (asserting that Gall “puts the discretion at sentencing in the district court, just where it should be, with due regard for the guidelines and the statutes relating to the goals of sentencing. Appellate courts are not sentencing courts.”). The guidelines are advisory only, and we “must review all sentences — whether inside, just outside, or significantly outside the Guidelines range — under a deferential abuse-of-discretion standard.” Gall, 552 U.S. at 41, 128 S.Ct. 586. The question is not whether the former mandatory guideline system would have called for a downward departure below the mandatory guideline range, cf. post, at 647-48, but whether the district court’s sentence of 121 months’ imprisonment is reasonable in light of the statutory considerations described in § 3553(a).
To support its conclusion that the district court’s chosen sentence was unreasonably harsh, the dissent cites a case involving a student at North Dakota State University (“NDSU”) who was prosecuted in North Dakota state court and sentenced to probation. The record of this case includes almost nothing about the NDSU case. Defense counsel stated that his summary, recounted by the dissent, post, at 657, was drawn from a newspaper article. The district court surely did not abuse its discretion by failing to conform Deegan’s federal sentence to a North Dakota state court case about which no evidence was presented.
We disagree, moreover, with the dissent’s contention that the district court should have considered the “disparity” between Deegan’s sentence and the sentence that may have been imposed if Deegan, like the NDSU student, had been prosecuted in state court. Post, at 656-57, 657-58, 660-61. This argument contradicts the well-settled proposition that “the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,” 18 U.S.C. § 3553(a)(6), refers only to disparities among federal defendants. It would have been error for the district court to consider potential federal/state sentencing disparities under § 3553(a)(6). United States v. Jeremiah, 446 F.3d 805, 807-08 (8th Cir.2006) (“Unwarranted sentencing disparities among federal defendants remains the only consideration under § 3553(a)(6) — both before and after Booker.”), United States v. Deitz, 991 F.2d 443, 447 (8th Cir.1993) (“If, at the time of sentencing, federal courts were to take into consideration a potential state sentence based upon similar state-charged of *636 fenses, the Sentencing Commission’s goal of imposing uniformity upon federal sentences for similarly situated defendants would be impeded, not furthered.”).[4]
:¡: * *
For the foregoing reasons, we conclude that the district court did not commit plain procedural error, and the court’s sentence of 121 months’ imprisonment is not substantively unreasonable with regard to 18 U.S.C. § 3553(a). The judgment of the district court is affirmed.

. The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

. We disagree with the dissent that the district court's description of the chosen sentence as "reasonable” demonstrates that the court applied an impermissible presumption of reasonableness to the advisory guideline sentence, post, at 650, or that the court misunderstood its duty under § 3553(a) to select a sentence that is "sufficient, but not greater than necessary” to comply with the purposes of § 3553(a)(2). Post, at 653. As in United States v. Vaughn, 519 F.3d 802, 805 (8th Cir. 2008), where the sentencing court said it was to impose a "reasonable sentence,” there is no plain error, because the record as a whole shows that the court followed the proper procedure under Gall.

. In its Fifteen Year Report, the Commission explained that murder was one of the offenses for which the original Commission, “either on its own initiative or in response to congressional actions, established guideline ranges that were significantly more severe than past practice.” See U.S. Sentencing Comm'n, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform 47 (2004). The report further observed that for violent crimes, “the Commission was careful to ensure that average sentences ... at least remained at current levels, and it raised them where the Commission was convinced that they were inadequate.” Id. at 68. It explained that “[f]or murder and aggravated assault, the Commission felt that past sentences were inadequate since these crimes generally involved actual, as opposed to threatened, violence.” Id. Nothing in these statements is inconsistent with an assumption that the second-degree murder guideline was based on empirical data and national experience, although the data and experience may have led the Commission to conclude that the average sentence should be increased.

. Even if two different sentences had been imposed in federal court, moreover, one district judge has no obligation after Booker to follow the decision of another district judge. Cf. post, at 649 & n. 25. District judges now are permitted to apply their own policy views when determining what punishment is sufficient for a particular offense under 18 U.S.C. § 3553(a), Spears v. United States, - U.S. -, 129 S.Ct. 840, 843, 172 L.Ed.2d 596 (2009) (per curiam); Kimbrough v. United States, 552 U.S. 85, 101, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), and there inevitably will be some disparity in the sentencing of similarly-situated offenders. Booker, 543 U.S. at 263, 125 S.Ct. 738 ("We cannot and do not claim that use of a 'reasonableness' standard will provide the uniformity that Congress originally sought to secure.”).