# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1025

_____

United States of America

*Plaintiff - Appellee*

v.

Jose Andres Vera-Gutierrez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: February 12, 2020
Filed: July 7, 2020

_____

Before LOKEN, BENTON, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Jose Andres Vera-Gutierrez of conspiracy to possess with intent to distribute 500 or more grams of methamphetamine, in violation of 21 U.S.C. § § 841(a)(1), 841(b)(1)(A), and 846. He was sentenced to 300 months in prison. On appeal, Vera-Gutierrez challenges the admission of three exhibits at trial and his sentence. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In 2017, the government indicted Vera-Gutierrez, Felipe Castro, Jr., and Maribel Torres for the conspiracy. Castro, a co-defendant, pleaded guilty and testified against Vera-Gutierrez. Vera-Gutierrez and Torres went to trial. At trial, there were 124 exhibits, including photographs, maps, and transcripts of 110 phone calls between the three defendants. The jury found Vera-Gutierrez guilty.

Vera-Gutierrez moved for a new trial based on admission of spreadsheets of phone calls between the members of the conspiracy, and maps showing cell-phone locations—offered without the underlying data from the phone companies or a witness to authenticate the data. The agent who made the maps and the spreadsheets was available for questioning at trial. On direct, the agent testified he created the exhibits based on data from mobile phone carriers, specifically testifying they were "true and accurate." Vera-Gutierrez objected to "foundation" as to one exhibit (113), and "foundation" and "hearsay" as to two exhibits (114 and 125). The district court[1] overruled the objections. On cross-examination, the agent was not asked about these exhibits. The district court denied the motion for new trial.

According to the presentence report, the sentencing guidelines range was 360 months to life imprisonment. Vera-Gutierrez objected to a two-level enhancement for obstruction of justice and requested a downward variance. The district court applied the enhancement but did grant a downward variance, sentencing Vera-Gutierrez to 300 months.

He appeals, arguing the district court erred by (1) admitting the spreadsheets and maps without authentication or the underlying data; (2) applying the enhancement for obstruction of justice; and (3) giving an unreasonable sentence.

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

## II.

This court reviews for abuse of discretion rulings about the admission of evidence, "affording deference to the district judge who saw and heard the evidence." *United States v. Melton*, 870 F.3d 830, 837 (8th Cir. 2017). Evidentiary rulings "should only be overturned if there was a clear and prejudicial abuse of discretion." *United States v. McCorkle*, 688 F.3d 518, 521 (8th Cir. 2012). "An erroneous evidentiary ruling is harmless, however, if it did not have a substantial influence on the jury's verdict." *United States v. Adejumo*, 772 F.3d 513, 525 (8th Cir. 2014). If the error is harmless, this court "need not decide whether the district court erred when it admitted the summary charts into evidence." *United States v. Spires*, 628 F.3d 1049, 1053 (8th Cir. 2011) (holding error was harmless in admitting summaries of call records of three phones when the record contained additional relevant evidence and consistent testimony of defendant's ex-associates).

Exhibit 113 is a chart showing records of all contacts between phone numbers identified with Vera-Gutierrez, Castro, and another co-conspirator, Everado Cota-Preciado over a 30-day period. The chart lists the date, time, duration, caller, and receiver of each call. Vera-Gutierrez argues that this chart was essential to the government's case, claiming it was the "only evidence" of communication between Vera-Gutierrez and Cota-Preciado, providing "important corroboration" of the government's allegations of frequent contacts between the co-conspirators.

A wiretap of Castro's phone captured 278 of the 361 contacts listed in the chart. Castro testified at length about Vera-Gutierrez's involvement in the conspiracy, including that he connected Castro and Cota-Preciado for the purpose of selling drugs. Castro also testified to the meaning of wiretapped conversations, indicating parts where Vera-Gutierrez and Castro discussed a plan to bring the drugs to Minnesota, where to store them, and how much they might sell for. Vera-Gutierrez testified to the

contrary, claiming he never participated with Castro in his dealings with drugs and that the wiretapped phone conversations were instead about selling cars and job opportunities. The jury is entitled to weigh the testimony of both Castro and Vera-Gutierrez, assessing for themselves the credibility of a cooperating witness. *See United States v. Whitlow*, 815 F.3d 430, 436 (8th Cir. 2016) ("We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony.").

Vera-Gutierrez emphasizes that his contacts with Cota-Preciado were not captured by the wiretap. However, even for these contacts, Vera-Gutierrez himself testified about multiple conversations with Cota-Preciado. Vera-Gutierrez denied he ever discussed drugs with Cota-Preciado, claiming that the conversations were about selling cars and job opportunities. Vera-Gutierrez acknowledges the conversations, not disputing the date, time, duration, caller, or receiver of each call. Additional evidence that Cota-Preciado knew Vera-Gutierrez was presented in a wiretapped phone call about drug money, where Cota-Preciado mentions Vera-Gutierrez by name. The record, other than Exhibit 113, contains substantial contact between Vera-Gutierrez and his co-conspirators. Even if admission of Exhibit 113 were in error for lack of foundation[2], any error was harmless.

Exhibit 114 has five maps with cell tower information showing travel times and locations of Castro; Exhibit 125 has four maps with cell tower information showing travel times and locations of Cota-Preciado. Vera-Gutierrez argues that these were essential to the government's case because they "corroborate" government allegations

---

[2]Vera-Gutierrez did not object as to hearsay for Exhibit 113, so his arguments about hearsay are not persuasive. *See United States v. Morrissey*, 895 F.3d 541, 554 (8th Cir. 2018) (holding hearsay objections not raised at trial were forfeited).

about Castro and Cota-Preciado's meetings to exchange drugs. He argues that without these maps, the government would lack "credible evidence" that Castro and Cota-Preciado physically met to carry out drug exchanges, or that Cota-Preciado went to Vera-Gutierrez's house after a failed drug delivery.

Like Exhibit 113, the contents of Exhibits 114 and 125 duplicate other evidence and testimony. Castro testified about his trip to Minnesota to deliver the drugs, mentioning the specific stops identified in Exhibit 114. Castro also detailed physical meetings between Cota-Preciado and himself. Matching this testimony, the wiretaps of Castro's phone confirm the dates and locations. Torres testified to Cota-Preciado's locations as well. Finally, a Task Force Officer testified he drove by Vera-Gutierrez's residence and observed Cota-Preciado's vehicle parked outside. Even if admission of Exhibits 114 and 125 were in error, any error was harmless. *See **United States v. Marrowbone**, 211 F.3d 452, 455 (8th Cir. 2000) ("An erroneous evidentiary ruling does not [a]ffect a substantial right and is harmless error if, after reviewing the entire record, we determine that the error did not influence or had only a slight influence on the verdict.").

III.

Vera-Gutierrez argues that the district court erred by applying an enhancement for obstruction of justice. This court reviews for clear error factual findings supporting an obstruction of justice enhancement. ***United States v. Abdul-Aziz***, 486 F.3d 471, 478 (8th Cir. 2007). If a defendant willfully obstructs or impedes the administration of justice, the sentencing guidelines call for an increase of two levels. *See **U.S.S.G. § 3C1.1** (enhancement applies when the obstructive conduct relates to the defendant's offense of conviction and any relevant conduct or a closely related offense). "An attempt to intimidate or threaten a witness, even if unsuccessful, is

sufficient to sustain a two-level enhancement for obstruction of justice." ***United States v. Thompson***, 210 F.3d 855, 861 (8th Cir. 2000). "The district court has broad discretion to apply section 3C1.1 to a wide range of conduct." ***United States v. Collins***, 754 F.3d 626, 629 (8th Cir. 2014).

Here, Castro testified that before trial, Vera-Gutierrez approached him at a market, telling him he did not want to know what would happen if he testified. Castro testified he felt threatened and frightened by this statement. The district court specifically found, "Mr. Castro's testimony is credible as to this issue [the threat]." "[A] district court's assessment of a witness's credibility is almost never clear error given that court's comparative advantage at evaluating credibility." ***United States v. Sandoval-Sianuqui***, 632 F.3d 438, 443 (8th Cir. 2011). *See **United States v. Harris***, 493 F.3d 928, 932 (8th Cir. 2007) (noting the district court's "assessment of witness credibility is virtually unassailable on appeal").

The district court did not err in applying an obstruction enhancement for threatening a witness. *See **United States v. Nunn***, 940 F.2d 1128, 1130 (8th Cir. 1991) (implicit telephone threat to a potential witness was obstruction of justice).

IV.

Vera-Gutierrez argues that his sentence of 300 months was substantively unreasonable. This court reviews the imposition of sentences for abuse of discretion, whether inside or outside the guidelines range. ***United States v. Feemster***, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). When "the sentence imposed is within the advisory guideline range, we accord it a presumption of reasonableness." ***Harris***, 493 F.3d at 932, *citing **Rita v. United States***, 551 U.S. 338, 347 (2007). When a district

court sentences a defendant below the advisory guidelines range, "it is nearly inconceivable that the court abused its discretion in not varying downward still further." *United States v. Anwar*, 880 F.3d 958, 973 (8th Cir. 2018). Here, the district court varied downward to a sentence of 300 months, from a range of 360 months to life.

"A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *Feemster*, 572 F.3d at 461. This court does not require a "mechanical recitation" of the factors. *Id.* "Rather, it simply must be clear from the record that the district court actually considered the § 3553(a) factors in determining the sentence." *Id.*

Here, the district court carefully considered the § 3553(a) factors, specifically citing the seriousness of the offense; the role Vera-Gutierrez played in connecting the drug courier and the meth supplier, and remaining in contact and involved during the conspiracy; the need to adequately deter both Vera-Gutierrez and others from similar conduct; the possibility of providing care, treatment, and training to Vera-Gutierrez; and the desire to avoid unwarranted disparities between Vera-Gutierrez's sentence and sentences of defendants with similar records found guilty of similar conduct (including Castro). The district court carefully discussed the mitigating factors presented by Vera-Gutierrez, including his difficult childhood and background, gainful employment, family, and impact in his community, accounting for these factors in sentencing.

The district court did not abuse its discretion in varying downward from the guidelines.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____