**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Elmer Peter BLACK CLOUD,
a/k/a Woody Black Cloud,
Defendant—Appellant.**

No. 96–1469.

United States Court of Appeals,
Eighth Circuit.

Submitted July 11, 1996.

Decided Dec. 2, 1996.

Christy Griffin Serr, Aberdeen, SD, argued, for Defendant–Appellant.

Mikal Hanson, Pierre, SD, argued (Karen E. Schreier, on the brief), for Plaintiff–Appellee.

Before WOLLMAN, JOHN R. GIBSON, and HANSEN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Elmer Black Cloud appeals his convictions for sexual abuse of a minor and incest in violation of 18 U.S.C. §§ 1153, 2243(a), and South Dakota Codified Laws § 22–22–1(6). Black Cloud argues on appeal that the district court [1] erred in allowing expert testimony on the likelihood of finding a Native American with all three of the genes found in Black Cloud's and his niece's child's DNA and that there was insufficient evidence to support the jury's guilty verdicts. We affirm the convictions.

The United States government charged Black Cloud with sexually abusing and committing incest with his fourteen-year-old niece. Before Black Cloud's trial, his niece gave birth to a baby boy. The government collected blood samples from Black Cloud's niece, her child, and Black Cloud. The government sent the blood to Dr. Herbert Polesky, the director of the Memorial Blood Center of Minneapolis, Minnesota, for genetic or DNA testing.

Dr. Polesky's DNA testing consisted of examining the genes found in three different locations in a person's DNA. Dr. Polesky first determined what genes the baby had received from his father at those three locations. Dr. Polesky then determined what type of genes Black Cloud had at those same three locations in his DNA. As a result of his testing, Dr. Polesky concluded that Black Cloud's genes matched the paternal genes of his niece's child at all three of the examined locations. Accordingly, Dr. Polesky concluded that Black Cloud could be the father of his niece's child.

Dr. Polesky also calculated the likelihood of finding a Native American with all three of the genes he had found in Black Cloud and the child. Dr. Polesky concluded that only 1 in 2237 Native Americans would have all three of the genes and possibly be the child's father.

At Black Cloud's trial the government called Dr. Polesky to testify about the DNA testing he had performed. Dr. Polesky testified that Black Cloud could be the child's father because Black Cloud had all three of the genes that were present in the child's paternal DNA. Black Cloud objected, however, to Dr. Polesky's testimony that only 1 in 2237 Native Americans would have all three of the genes found in Black Cloud's and the child's DNA.

Due to Black Cloud's objection, the district court conducted a hearing to determine whether Dr. Polesky's testimony was admissible evidence under Rule 702 of the Federal Rules of Evidence. Following the guidelines set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *United States v. Martinez*, 3 F.3d 1191 (8th Cir.1993), *cert. denied*, 510 U.S. 1062, 114 S.Ct. 734, 126 L.Ed.2d 697 (1994), the district court found that Dr. Polesky's scientific techniques: (1) could be and were tested; (2) were subjected to peer review and publications; (3) had a

---

1. The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

known rate of error that was low; and (4) were generally accepted scientific techniques. The district court also found that Dr. Polesky's scientific techniques were reliable and that he had properly followed those techniques. Based on these findings, the district court admitted into evidence Dr. Polesky's testimony.

After hearing Dr. Polesky's testimony and other evidence, the jury convicted Black Cloud of sexual abuse of a minor and incest. Black Cloud appeals his convictions.

## I.

Black Cloud argues that the district court erred in admitting Dr. Polesky's testimony on the likelihood of finding a Native American with all three of the genes found in Black Cloud's and the child's DNA.

■ We review a district court's decision on whether to admit evidence for an abuse of discretion. *United States v. Roulette,* 75 F.3d 418, 423 (8th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 147, 136 L.Ed.2d 93 (1996). Before admitting expert scientific testimony at trial, Rule 702 requires the district court to determine whether the testimony is based on a reliable scientific technique, and whether it will assist the jury. *United States v. Johnson,* 56 F.3d 947, 952 (8th Cir.1995). In assessing the reliability of a scientific technique, the district court should consider these factors: (1) whether the technique can be and has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the known or potential rate of error for the technique and the existence and maintenance of standards for controlling the technique's operation; and (4) whether the technique is generally accepted in the scientific community. *Daubert,* 509 U.S. at 593–95, 113 S.Ct. at 2796–98. Even if expert scientific testimony is admissible under Rule 702, the district court may exclude the testimony if the testimony has an unfairly prejudicial effect that substantially outweighs its probative value. Fed.R.Evid. 403; *United States v. Chischilly,* 30 F.3d 1144, 1156 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 946, 130 L.Ed.2d 890 (1995).

## A.

■ Black Cloud argues that the district court admitted Dr. Polesky's testimony on the likelihood of finding a Native American with all three of the genes found in Black Cloud's and the child's DNA without hearing evidence on the reliability of Dr. Polesky's scientific techniques as required by Rule 702. We reject Black Cloud's argument because the record shows that the district court received such evidence before it admitted Dr. Polesky's testimony.

At trial Black Cloud objected specifically to Dr. Polesky's testimony on the likelihood of finding a Native American with all three of the genes found in Black Cloud's and the child's DNA. The district court stopped the trial and conducted a hearing on the reliability of Dr. Polesky's techniques. During this hearing, Dr. Polesky testified about the techniques he used to calculate the likelihood of finding a Native American with all three of the genes found in Black Cloud's and the child's DNA. With respect to these techniques, Dr. Polesky gave testimony relating to the four factors that the district court should consider when assessing the reliability of a scientific technique. Though Dr. Polesky's testimony covered many topics and was not presented in the most coherent manner, the record shows that the district court received evidence on and ruled on the reliability of Dr. Polesky's techniques for calculating the likelihood of finding a Native American with all three of the genes found in Black Cloud's and the child's DNA.

## B.

■ Black Cloud argues that the district court should not have allowed Dr. Polesky to testify about the likelihood of finding a Native American with all three of the genes found in Black Cloud's and the child's DNA because Dr. Polesky's scientific techniques were unreliable.

To calculate the likelihood of finding a Native American with all three of the genes found in Black Cloud's and the child's DNA, Dr. Polesky first determined the likelihood of finding each of the three genes in a Native

American. Dr. Polesky calculated the likelihood of finding each one of the three genes by determining how often each gene occurred in the DNA he had collected from 675 to 800 Native Americans. After calculating the likelihood for each gene, Dr. Polesky calculated the likelihood of finding all three of the genes in a Native American by multiplying the likelihood or frequency of each gene with those of the other two genes.[2] Using this technique, Dr. Polesky testified that only 1 in 2237 Native Americans would have all three of the genes he found in Black Cloud's and the child's DNA.

Black Cloud asserts that Dr. Polesky's techniques were unreliable because Dr. Polesky based them on the false assumption that the likelihood of finding one gene in a person's DNA is unrelated to the likelihood of finding another gene in that person's DNA. To support his argument Black Cloud points to Dr. Polesky's statement that some scientists have questioned the assumption that the frequency of one gene is unrelated to that of another. Dr. Polesky also testified that some genes were related to other genes.

· This testimony does not convince us that the district court abused its discretion in admitting Dr. Polesky's testimony on the likelihood of finding a Native American with all three of the genes found in Black Cloud's and the child's DNA. While Dr. Polesky testified that some genes were related to other genes, he explained that this was only the case when the genes were very close together in a person's DNA. Dr. Polesky further explained that he purposely studied genes found far apart from each other so that their frequency would be unrelated. Dr. Polesky also stated that he has performed tests on some of the genes he analyzed in this case and that these tests confirmed that those genes were unrelated. In light of Dr. Polesky's entire testimony, the district court did not abuse its discretion in admitting his testimony.

## C.

Black Cloud's final objection to Dr. Polesky's testimony on the likelihood of finding a Native American with all three of the genes found in Black Cloud's and the child's DNA is that this testimony was so unfairly prejudicial that the district court should have excluded it. Black Cloud has not explained how this testimony was unfairly prejudicial. Dr. Polesky testified in detail about his techniques for calculating the likelihood of finding a Native American with all three of the genes found in Black Cloud's and the child's DNA. Black Cloud's attorney thoroughly cross-examined Dr. Polesky over his techniques. We have found nothing in the record to suggest that this testimony was so unfairly prejudicial that the district court should have excluded it. *See Chischilly*, 30 F.3d at 1156–58; *United States v. Bonds*, 12 F.3d 540, 567–68 (6th Cir.1993).

Black Cloud relies on *Martinez* to support his argument that Dr. Polesky's testimony was unfairly prejudicial. The district court in *Martinez* excluded expert testimony on the likelihood of finding certain genes under Rule 403 because it was substantially more prejudicial than probative. 3 F.3d at 1193. On appeal, this court did not address the issue of the prejudicial nature of the expert testimony because the defendant at trial asked that the statistical testimony be excluded and, thus, invited any error concerning the exclusion of this evidence himself. *Id.* at 1199.

The district court's exclusion of expert testimony on the likelihood of finding certain genes in *Martinez* does not require us to conclude that the district court in this case should have excluded similar testimony. The holding in *Martinez* simply does not touch the arguments that Black Cloud raises. We review district court decisions on the admission of evidence for an abuse of discretion. It is not necessarily an abuse of discretion to admit testimony in one case when similar testimony has been excluded from another. We conclude that the district court

---

**2.** For example, if gene A is found in 1 out of every 10 Native Americans, gene B is found in 1 out of every 5 Native Americans, and gene C is found in 1 out of every 8 Native Americans, then only 1 in every 400 ($10 \times 5 \times 8$) Native Americans will have genes A, B, and C according to Dr. Polesky's technique.

in this case did not abuse its discretion in admitting Dr. Polesky's testimony.

## II.

Black Cloud argues that there was insufficient evidence to support his convictions because there was no evidence that he had any sexual contact with his niece.

 In reviewing the sufficiency of the evidence to support a guilty verdict, we look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict. We then uphold the conviction only if it is supported by substantial evidence. *United States v. Plenty Arrows,* 946 F.2d 62, 64 (8th Cir.1991); *see also Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

We conclude that there is substantial evidence to support Black Cloud's convictions. Black Cloud's wife testified that Black Cloud told her that his niece was pregnant. Already being suspicious of Black Cloud's relationship with his niece, Black Cloud's wife asked him if he was going to deny that the baby was his. Black Cloud's wife testified that Black Cloud answered no, he would not deny that the baby was his.

Several witnesses testified that Black Cloud had an unusual relationship with his niece. Black Cloud's wife testified that Black Cloud showered expensive gifts on his niece. She also testified that Black Cloud was at his niece's house everyday and that he gave his niece a ride to school everyday. Donna Black Cloud, Black Cloud's sister-in-law and aunt to Black Cloud's niece, testified that she had seen Black Cloud with his niece and that they acted like young lovers together. Stephanie Looking Back, a classmate of Black Cloud's niece, testified that she saw Black Cloud with his niece and that they were acting like Looking Back would act with her boyfriend. A police officer testified that while conducting a search of the home of Black Cloud's niece at six-thirty in the morning, he found Black Cloud and Black Cloud's niece together in her bedroom. The officer stated that Black Cloud had no shirt, socks, or shoes on and was wearing only jeans.

Finally, three experts in DNA testing each testified that in their opinion Black Cloud was the father of his niece's child. Each expert discussed before the jury the DNA testing on which they based their opinion. This expert testimony combined with the other testimony presented at Black Cloud's trial is substantial evidence supporting his convictions.

Accordingly, we affirm Black Cloud's convictions.