# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1680

_____

United States of America,         *
         *
    Plaintiff - Appellee,    *
         *   Appeal from the United States
   v.        *   District Court for the
         *   Eastern District of Arkansas.
Fred A. Green,         *
         *
    Defendant - Appellant.    *

_____

Submitted:  December 8, 2008
Filed:  March 26, 2009

_____

Before LOKEN, Chief Judge, BEAM and ARNOLD, Circuit Judges.

_____

LOKEN, Chief Judge.

A jury convicted Fred A. Green of possession with intent to distribute cocaine, conspiracy to distribute cocaine, possession of a machine gun in furtherance of drug trafficking, and being a felon in possession of a firearm. He was sentenced to 548 months in prison. See 18 U.S.C. § 924(c)(1)(B)(ii). Green appeals his conviction, arguing that the district court[1] erred in not suppressing evidence found during a protective sweep of his residence at the time of his arrest, and in not declaring a mistrial on account of the government's improper rebuttal argument. We affirm.

---

[1]The HONORABLE JAMES M. MOODY, United States District Judge for the Eastern District of Arkansas.

## I. Suppression Issues

After extensive investigation and surveillance, United States Marshals and Dallas police officers executed an Arkansas fugitive arrest warrant at Green's residence in a Dallas suburb. Upon entering, the officers secured four other men found in the living room and spread out in the large house to conduct a protective sweep and to search for Green. Deputy Marshal Thomas Kinsella and Police Officer Kurt Hibbits proceeded to the kitchen area. Marshal Kinsella entered a large pantry and saw in plain view a duffel bag with a clear plastic bag "with white powdery substance sticking out." The duffel bag was seized and found to contain 486 grams of cocaine, 145 grams of methamphetamine, and digital scales.

Meanwhile, Officer Hibbits went through the kitchen to the attached garage, where Green was located and arrested. Other officers continued the protective sweep without a search warrant, seizing various items. At issue on appeal are the drugs in the duffel bag; a MAC-10 9mm machine gun with two magazines, a Derringer .410 caliber pistol, and $13,664 in cash found on top of a six foot dresser in the master bedroom; an SKS .308 caliber rifle found in a large bedroom closet; and 229 rounds of 9mm ammunition for the MAC-10 machine gun and nine rounds of .410 caliber ammunition for the Derringer. Green argues that the officers exceeded the permissible limits of a protective sweep in seizing this evidence. We review the district court's findings of fact for clear error and the ultimate question whether the Fourth Amendment was violated de novo. United States v. Walsh, 299 F.3d 729, 730 (8th Cir.), cert. denied, 537 U.S. 1066 (2002).

"The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 337 (1990). To be "properly limited," a protective sweep must be "a quick and

limited search of premises . . . conducted to protect the safety of police officers or others [and] narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Id. at 327. "[A]n officer arresting a suspected drug trafficker in one room of a multi-room residence is justified in conducting a Buie sweep out of concern that there could be individuals lurking in the other rooms who may resort to violence to thwart the arrest." United States v. Cash, 378 F.3d 745, 749 (8th Cir. 2004), cert. denied, 544 U.S. 963 (2005).

During a properly limited protective sweep, the police may seize an item that is in plain view if its incriminating character is "immediately apparent." Horton v. California, 496 U.S. 128, 136 (1990). The government bears the burden of proving that this exception to the search warrant requirement applies. United States v. Weston, 443 F.3d 661, 667 (8th Cir.), cert. denied, 549 U.S. 956 (2006).

**A. Evidence Found on Top of the Dresser.** The suppression hearing evidence established that the master bedroom dresser was 71" high, 68" wide, and 13" deep at the top. Officer Hibbets testified that he could not see on top of the dresser from the floor, but the space was large enough to conceal a person. Therefore, the government argued, officer safety warranted stepping on a chair to ensure that no one was hiding there. Once level with the top, the officer could see down into a six-inch depression, and the two handguns and cash came into plain view. After hearing testimony by Green's investigator, who measured and photographed the dresser in detail, the district court found that a person on top of the dresser would in fact have been visible from the floor to a police officer conducting a protective sweep of the bedroom. However, the court denied suppression, explaining: "But I don't think that that's the test here. I think the test is whether that officer could reasonably think that someone might be on top of that dresser and justify examining the area."

On appeal, Green argues that the photographs of the dresser "reveal that the top portion could not have concealed a person." He adds that, "during the process of

standing on a chair," the officer "should have realized . . . during his ascent, that [the dresser] could not have concealed a person," an argument not made to the district court. Though the issue is close, we agree with the district court's ruling. Officers conducting a protective sweep must act quickly and decisively to minimize the risk of ambush. See Buie, 494 U.S. at 333. They must be allowed to verify that potential hiding spaces are empty. Here, the officer stood on a chair to obtain a better view of a location where it was reasonable to believe a person could be hiding. Like the district court, we conclude that action was an objectively reasonable step to ensure officer safety that brought incriminating items into plain view. In these situations, "[w]e should not, in the quiet of our chambers, look with eagle's eyes to spy out flaws in the officers' reasoning after the fact." United States v. Bruton, 647 F.2d 818, 823 (8th Cir.), cert. denied, 454 U.S. 868 (1981).

**B. The SKS Rifle and Ammunition.** Conceding that the upstairs closet was large enough to conceal a person, Green argues that the government failed to prove that this evidence was found in plain view because "the only witness to testify about the ammunition and the .308 SKS rifle, [Officer] Hibbets, could not testify as to where those items were located." The district court credited Officer Hibbets's testimony that another officer said the rifle was visible as soon as he opened the closet door. Though Hibbets was not the officer who did the protective sweep of the closet, "the district court may rely on hearsay evidence at a suppression hearing." United States v. Thompson, 533 F.3d 964, 969 (8th Cir. 2008). The court's assessment of witness credibility is "virtually unreviewable" on appeal. United States v. Behler, 187 F.3d 772, 777 (8th Cir. 1999). After careful review, we conclude the court's finding that the rifle was in the plain view of an officer conducting a protective sweep of the closet was not clearly erroneous.

At the conclusion of the suppression hearing, Green argued that the ammunition must be suppressed because Hibbets could not recall where it was found. The district court did not refer to the ammunition in its oral decision (or a subsequent written

ruling); Green failed to question this omission. When the government offered the 9mm and .410 caliber ammunition into evidence at trial, Green renewed his motion to suppress. The court replied, "I considered all the evidence on the motion to suppress and the motion is denied." Again, Green failed to point out that the court had not expressly ruled on the ammunition. Though admitted into evidence, the ammunition was not mentioned during closing arguments and was of little relevance to the charges against Green -- drug trafficking and unlawful possession of a machine gun. In these circumstances, even if the government failed to present evidence that the ammunition was found in plain view during the protective sweep, Green's lack of diligence in pursuing the issue confirms our conclusion that admission of the ammunition at trial was harmless error. See United States v. Blom, 242 F.3d 799, 809 (8th Cir.), cert. denied, 534 U.S. 880 (2001).

**C. The Drugs in the Pantry.** Assuming that the pantry was a large area appropriate for a protective sweep, and that the duffel bag with drugs sticking out was in Deputy Marshal Kinsella's plain view, Green argues that the drugs must be suppressed because they resemble other items commonly found in a panty, such as sugar, flour, and wheat, and therefore their incriminating character was not "immediately apparent." The Supreme Court has clarified that "immediately apparent" in this Fourth Amendment context means that the police have probable cause to believe an item is incriminating. Skokos v. Rhoades, 440 F.3d 957, 961 (8th Cir. 2006), citing Texas v. Brown, 460 U.S. 730, 741-42 (1983). "Probable cause demands . . . only that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of a crime." United States v. Garner, 907 F.2d 60, 62 (8th Cir. 1990) (quotations omitted), cert. denied, 498 U.S. 1068 (1991).

Kinsella testified that he has served over five hundred arrest warrants, knew that Green's arrest warrant was for drug-related offenses, and could recognize cocaine and methamphetamine, though not with certainty. Upon entering, he saw a clear plastic

bag containing a white powdery substance that looked like cocaine sticking out of a dark duffel bag sitting on a cooler just inside the pantry. We agree with the district court that Kinsella had probable cause to seize the duffel bag when he observed what he thought was contraband in the form of drugs in plain view. Therefore, suppression of the drugs was properly denied.

## II. The Government's Rebuttal Argument

Green argues that the district court committed plain error in failing to declare a mistrial, *sua sponte*, when the prosecutor made two improper statements during rebuttal closing argument. First, the prosecutor stated: "You know, we could have sat here all day and had you listen to a number of witnesses that have come through and talked to the government about their involvement that have already pled guilty in this." One transcript page later, the prosecutor in referring to the recording of a phone conversation between Green and his sister that had been admitted in evidence stated: "you can fast-forward it to about 12 minutes, 40 seconds. And there's a disturbing part where he's talking about there's nothing wrong with distributing product to, I assume, infidels or whomever that are not the children of Israel."

Following this argument, defense counsel stated, outside the jury's presence:

> I did not interrupt closing argument. I probably should have for the record. First thing, it is improper to argue we had other witnesses who could testify to this, but we didn't bring those witnesses, because these people were related to Fred Green.

> *    *    *    *    *

> The last thing is, he refers to the phone call. . . . [Green] doesn't make those references like [the prosecutor] said in his argument. His sister makes those references, and Fred actually says "huh," like he can't understand what's going on.

-6-

The court noted it remembered the sister made that comment and asked:

> THE COURT: What do you want me to do?
>
> * * * * *
>
> [DEFENSE COUNSEL]: I'm not going to ask for a mistrial. . . . I would like for the Court to consider admonishing the jury on those two points I just raised.

The district court then instructed the jury, without further objection:

> Ladies and gentlemen, one final comment. With respect to the statements that [the prosecutor] may have made about witnesses that could have been called by the government to bolster their case, I think you understand that you are to decide the case just on the evidence that you heard during the trial, not by any speculative evidence that might have been brought to the trial. So you will only consider the exhibits and the testimony that you heard during the trial in your deliberations.

On appeal, Green and the Government agree that, because Green did not request a mistrial, we review the failure to grant that relief for plain error. Without question, in the absence of a timely objection, it is usually appropriate to review for plain error whether a prosecutor's improper statements during closing argument warrant a new trial. See United States v. Young, 470 U.S. 1, 6, 14-16 (1985); United States v. Davis, 534 F.3d 903, 914 (8th Cir. 2008), cert. denied, 2009 WL 166510 (U.S. Feb. 23, 2009). Here, we question whether even plain error review is appropriate because (i) Green's attorney explicitly declined to request a mistrial, and (ii) the district court gave a curative instruction, as Green requested, and Green did not object to the instruction given. As we said in United States v. Thompson, 289 F.3d 524, 526 (8th Cir. 2002), "[o]n appeal, [Green] cannot complain that the district court gave him

exactly what his lawyer asked." On the other hand, we reviewed the failure to order a new trial for plain error under similar circumstances in United States v. Ehrmann, 421 F.3d 774, 783 (8th Cir. 2005), cert. denied, 546 U.S. 1122 (2006).

Assuming without deciding that plain error review is required, we conclude there was no plain error in this case. First, the prosecutor's reference to other witnesses the government could have called was clearly improper. But the district court's curative instruction, noting that reference, and reminding the jury it must base its decision only on the evidence presented at trial, squarely addressed both the comment and the reason it was improper. Second, the prosecutor incorrectly attributed a prejudicial comment in a phone conversation to Green, rather than to his sister. But in the same comment, the prosecutor urged the jury to listen to that portion of the tape, which would have reminded the jury who made the comment (a reminder the district court did not need). The court's curative instruction, while not directed to this comment, told the jury to base its decision on the evidence presented, which would cure the prosecutor's factual error. Green did not request a more explicit instruction. In these circumstances, the failure to declare a mistrial *sua sponte* was not reversible error, see United States v. Chase, 451 F.3d 474, 481 (8th Cir. 2006), and certainly was not plain error, compare United States v. Carter, 410 F.3d 1017, 1026 (8th Cir. 2005).

The judgment of the district court is affirmed.

_____