# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3222

_____

United States of America,        *
                                    *

        Appellee,            *
                                    *

    v.                       *
                                    *

Douglas M. Meeks,          *
                                    *

        Appellant.        *

_____

No. 09-3234

_____

Appeals from the United States
District Court for the
Southern District of Iowa.

United States of America,        *
                                    *

        Appellee,            *
                                    *

    v.                       *
                                    *

Lloyd D. Meeks,            *
                                    *

        Appellant.        *

_____

Submitted: September 24, 2010
Filed: April 12, 2011

_____

Before GRUENDER, ARNOLD, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Douglas Meeks and Lloyd Meeks appeal their convictions for distribution of crack cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), (b)(1)(B), and for conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841(b)(1)(B), 846, as well as their respective life sentences imposed by the district court[1] following conviction. We affirm.

I.

The following facts are taken from testimony given during the three-day trial of Douglas M. Meeks (Douglas) and Lloyd D. Meeks (Lloyd), who are maternal half brothers. The facts are presented in the light most favorable to the verdict. See United States v. Lockett, 601 F.3d 837, 839 (2010).

In September 2007, federal authorities arrested Gentry Ellis on charges of drug distribution. Subsequent to his arrest, Monique Nicholson, Ellis's girlfriend, and Cardale Smith, Ellis's son, contacted law enforcement and offered to serve as cooperating individuals. Both admitted to having previously purchased drugs from Douglas and stated that they would be willing to participate in controlled buys of additional drugs from Douglas.

Law enforcement authorities organized a controlled buy for April 8, 2008. On that date, Nicholson and Smith traveled to the Davenport Police Station where they and their vehicle were searched by officers. In monitored phone calls, Smith contacted Douglas and arranged for Smith and Nicholson to meet Douglas at a

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

-2-

hospital parking lot near Nicholson's residence. Police officers provided Smith with $800 in prerecorded currency and installed a recording device on his person. While Nicholson and Smith were waiting at the hospital parking lot, Douglas called and instructed them to meet him in the parking lot of an O'Reilly's Auto Parts store. After Nicholson and Smith arrived at that location, Douglas drove up in a black sport utility vehicle. Smith entered the vehicle and exchanged the $800 for crack cocaine. When Smith and Nicholson returned to the police department, Smith turned over the crack cocaine to law enforcement, and officers searched Smith, Nicholson, and their vehicle again.

On June 20, 2008, Nicholson assisted law enforcement with a second controlled buy. Prior to this date, Nicholson had contacted Douglas about purchasing two ounces of crack cocaine from him, and Douglas had agreed to sell to Nicholson. While at the police department, Nicholson called Douglas to arrange for the purchase of crack cocaine. Douglas told her that his brother, Lloyd, would contact her. When Lloyd called Nicholson, Nicholson requested one ounce of crack cocaine. Lloyd responded that he thought she was looking for two ounces, and Nicholson stated that she had only enough money for one ounce. After following similar search procedures as with the April 8 controlled purchase, officers provided Nicholson with $900 in prerecorded money. Lloyd directed Nicholson to an apartment complex where his girlfriend, Jessica Balli, resided. After Nicholson arrived at the apartment complex, Lloyd drove up, entered an apartment using a key, exited the apartment, and entered Nicholson's vehicle. Lloyd exchanged an ounce of crack cocaine for the $900. In their prior negotiations, Douglas had informed Nicholson that the ounce of crack cocaine would cost $1000. Nicholson told Lloyd that she did not know when she would have the remaining $100 and asked who she should contact when she did get the money. Lloyd told her to contact Douglas. On June 23, 2008, Nicholson made a series of recorded phone calls to Douglas regarding the additional $100 owed to him for the crack cocaine. When she eventually made contact with Douglas, he directed Nicholson to give the $100 to her sister.

In a superseding indictment, Douglas and Lloyd were charged with conspiracy to distribute at least 50 grams of cocaine base (Count I) and distributing at least 5 grams of cocaine base (Counts II and III). Douglas was also charged individually with two counts of tampering with a person (Counts IV and V). After jury selection but before the jury was sworn in, the tampering counts against Douglas were dismissed. The jury found Douglas and Lloyd guilty on all drug counts. Because the district court found that both Douglas and Lloyd had two prior felony drug convictions, the court sentenced each to mandatory life imprisonment terms on the conspiracy count and concurrent terms of 360 months on the individual distribution counts. Each filed timely appeals of their convictions and sentences.

## II. Trial Issues

### A.

Douglas argues that the district court erred in denying Lloyd's motion for a mistrial based on the court's reading of the tampering with a witness counts that were dismissed prior to the beginning of the trial. The jury was empaneled on a Friday afternoon. At that time, the superceding indictment, which contained the tampering charges, was read to the jury. On Monday morning, the government moved to dismiss those charges. Douglas raised concerns that the superceding indictment had been read to the jury, and requested that "at a minimum" the court instruct the jury to refrain from considering the dismissed counts. Lloyd moved for a mistrial, arguing that he was prejudiced by the reading of the indictment that included the dismissed counts. The district court denied Lloyd's motion but granted Douglas's request, instructing the jury that the counts had been dismissed and that the jury "should not speculate as to whether the government had evidence or not that would support those charges." (Trial Tr. at 102.)

Douglas did not object to the dismissal of the tampering counts and failed to move for a mistrial or join in Lloyd's motion for mistrial. We have assumed, without deciding, that plain error review is appropriate in the situation where the defendant fails to move for mistrial. See United States v. Green, 560 F.3d 853, 859 (8th Cir.), cert. denied, 130 S. Ct. 288 (2009). Although Douglas received "exactly what his lawyer asked" for, id. (quoting United States v. Thompson, 289 F.3d 524, 526 (8th Cir. 2002)), we will, as we did in Green, review the district court's failure to grant a mistrial, id. (citing United States v. Ehrmann, 421 F.3d 774, 783 (8th Cir. 2005)).

We conclude that the district court did not plainly err in declining to declare a mistrial in this case. Under plain error review, the defendant "must show that the court committed an error that was plain, that affected his substantial rights, and that seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Davis, 538 F.3d 914, 917 (8th Cir. 2008) (quotation omitted). Even if the reading of the superceding indictment to the empaneled jury was error, Douglas cannot show that his substantial rights were affected or that the fairness of the judicial proceedings is in question. The district court gave a clear instruction to the jury that the indictment was not proof and that the jury should not speculate as to why the counts were dismissed or what the evidence would have been regarding the dismissed charges.

B.

Both Douglas and Lloyd argue that the government failed to present sufficient evidence to support their convictions for conspiracy to distribute crack cocaine. We review de novo challenges to the sufficiency of the evidence presented at trial. United States v. Ironi, 525 F.3d 683, 689-90 (8th Cir. 2008). In conducting the review, we consider the evidence presented at trial in the light most favorable to the verdict and draw all reasonable inferences in the government's favor. United States v. McAtee, 481 F.3d 1099, 1104 (8th Cir. 2007). We avoid weighing the evidence or assessing

the credibility of the witnesses. United States v. Santana, 524 F.3d 851, 853 (8th Cir. 2008). Reversal is warranted only if no reasonable jury could have found guilt beyond a reasonable doubt. Id.

To convict Douglas and Lloyd of conspiracy to distribute crack cocaine, the government had to prove that: (1) two or more people reached an agreement to distribute crack cocaine; (2) both Douglas and Lloyd voluntarily and intentionally joined that agreement; and (3) at the time Douglas and Lloyd joined the agreement, each knew its essential purpose. United States v. Harris, 493 F.3d 928, 931 (8th Cir. 2007). Proof of an express agreement is not necessary. United States v. Jiminez, 487 F.3d 1140, 1146 (8th Cir. 2007). We will affirm the conviction where the government establishes a tacit understanding between alleged co-conspirators. Id. Because many drug conspiracies involve secrecy, circumstantial evidence may be used to show that co-conspirators reached an agreement. Id.

We hold that the government presented sufficient evidence to support the convictions of both Douglas and Lloyd. The strongest proof is found in the June 20 controlled buy wherein Nicholson contacted Douglas to purchase crack cocaine, Douglas told Nicholson that Lloyd would get in contact with her, Lloyd did contact Nicholson and sold crack cocaine to her, Lloyd told Nicholson to contact Douglas about the remaining $100 she owed for the crack cocaine, and Nicholson received direction from Douglas to give the $100 to her sister. This evidence shows Douglas and Lloyd had reached an agreement to sell crack cocaine, had voluntarily joined that agreement, and were fully aware of its purposes.

This was not, however, the only evidence of conspiracy presented by the government. Darriccio Hopson testified that he sold crack cocaine from the Castlewood apartments in Davenport, Iowa. Hopson stated that he often worked in conjunction with Douglas, including traveling to Chicago with Douglas to obtain crack cocaine to sell. He also testified that he observed Douglas and Lloyd selling

crack cocaine from the Castlewood apartments. More specifically, Hopson testified that he observed Douglas and Lloyd packaging crack cocaine in the apartment of Lloyd's girlfriend, Kenya McCray. Although Douglas and Lloyd attack the credibility of the witnesses, the jury assessed the witnesses and their testimony and apparently found them credible. See United States v. Hodge, 594 F.3d 614, 618 (8th Cir.), cert. denied, 130 S. Ct. 3401 (2010) ("A jury's credibility determinations are well-nigh unreviewable because the jury is in the best position to assess the credibility of witnesses and resolve inconsistent testimony."). We affirm the conspiracy convictions.

## C.

Lloyd argues that the jury should have been given an instruction that the charge of distribution of crack cocaine was a lesser included offense of the conspiracy charge. Lloyd never requested a lesser-included instruction so this issue was not properly raised before the district court, and therefore we review it for plain error. See Jones v. United States, 527 U.S. 373, 388 (1999).

Generally, a lesser-included-offense instruction is proper where "(1) a proper request is made; (2) the lesser-offense elements are identical to part of the greater-offense elements; (3) some evidence would justify conviction of the lesser offense; (4) there is evidence such that the jury may find the defendant innocent of the greater and guilty of the lesser-included-offense; and (5) mutuality." United States v. Crawford, 413 F.3d 873, 876 (8th Cir. 2005) (citing United States v. Parker, 32 F.3d 395, 400-01 (8th Cir. 1994)). Lloyd's argument fails on the first two prongs. First, he never made a request for a lesser-included instruction. Second, one element of a drug distribution offense is that the defendant actually distributed a controlled substance, however a conspiracy does not require actual distribution but does include the element that two or more persons reached an agreement to distribute drugs. See United States v. Hernandez, 569 F.3d 893, 896 (8th Cir. 2009), cert. denied, 130 S. Ct.

1308 (2010); <u>United States v. Harris</u>, 493 F.3d 928, 931 (8th Cir. 2007). Thus, because a distribution offense's elements are not identical to part of a conspiracy's elements, the district court did not plainly err by failing to provide a lesser-included instruction sua sponte.

D.

Douglas claims that the district court erred in denying his motion for a new trial because the jury pool allegedly did not represent a fair cross-section of the community and because after the first day of the trial, a local newspaper contained an inaccurate statement linking Douglas to the possession of a firearm. Douglas purports to raise these issues pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967).[2] These issues are meritless. <u>See</u> <u>Tunstall v. Hopkins</u>, 306 F.3d 601, 610 (8th Cir. 2002); <u>United States v. Brown</u>, 91 F.3d 1109, 1111-12 (8th Cir. 1996).

---

[2]The inclusion of issues brought pursuant to <u>Anders</u> in a merits brief is a practice that is to be avoided. We recognize that this is not the first time we have been presented a case where counsel purports, in a merits brief, to argue meritless issues under <u>Anders</u>. <u>See</u> <u>United States v. Moore</u>, 624 F.3d 875, 878-79 (8th Cir. 2010), <u>cert. denied</u>, 130 S. Ct. 1059 (2011); <u>United States v. Jones</u>, 559 F.3d 831, 837 (8th Cir. 2009). The proper use of <u>Anders</u>, however, is unique in the appellate system. As the Supreme Court explained, appointed counsel has an obligation to "active[ly] advocate in behalf of his client" and "if counsel finds his *case to be wholly frivolous*, after a conscientious examination of it, he should so advise the court and request permission to withdraw." <u>Anders v. California</u>, 386 U.S. 738, 744 (1967) (emphasis added). The request must be accompanied by what is commonly termed an <u>Anders</u> brief, which should "refer[] to anything in the record that might arguably support the appeal." <u>Id.</u> Upon the filing of an <u>Anders</u> brief with an accompanying motion to withdraw, the Court is obligated to independently conduct "a full examination of all the proceeding[s] to decide whether the case is wholly frivolous." <u>Id.</u>; <u>see</u> <u>Penson v. Ohio</u>, 488 U.S. 75, 80 (1988). Simply put, there is no provision for including "<u>Anders</u> issues" in a merits brief. Either the issue is meritless and thus should not be included in a merits brief, or the issue has merit and should be vigorously argued.

## II. Sentencing Issues

### A.

Douglas argues that the district court erred in using a prior felony drug conviction committed when Douglas was sixteen to enhance his sentence to life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). He maintains that the use of the juvenile conviction to enhance his sentence violates the Eighth Amendment. After the briefs were filed in this case, this Court decided United States v. Scott, 610 F.3d 1009 (8th Cir. 2010), cert. denied, 131 S. Ct. 964 (2011). In Scott, we rejected the identical constitutional challenge raised by Douglas. Id. at 1018. As one panel of this Court cannot overturn the decision of another panel of the Court, we reject Douglas's challenge as well. See Jackson v. Ault, 452 F.3d 734, 736 (8th Cir. 2006).

### B.

Douglas next contends that the district court should have varied downward from the advisory guidelines range to eliminate the disparity in base offense levels for identical quantities of crack and powder cocaine. While we have held that a district court does not abuse its discretion in considering the crack/powder cocaine disparity, we have also emphasized that the district court is not required to do so. See United States v. Lewis, 593 F.3d 765, 773 (8th Cir.), cert. denied, 130 S. Ct. 3375 (2010). Furthermore, because we reject Douglas's challenge to his statutorily mandated life-imprisonment sentence, his challenge to the Guidelines calculation is moot. See United States v. McCarther, 596 F.3d 438, 445 (8th Cir. 2010); see also United States v. Watts, 553 F.3d 603, 604-05 (8th Cir.), cert. denied, 130 S. Ct. 141 (2009) (per curiam) (recognizing that district courts lack the authority to consider the crack/powder cocaine discrepancy when imposing statutorily mandated sentences).

## C.

Lloyd challenges the district court's refusal to make a finding on whether Lloyd was in possession of a firearm. Lloyd acknowledges that the finding would have no bearing on his sentence or the Guidelines calculation, but argues that because the presentence investigation report included the enhancement he is ineligible for certain Bureau of Prisons programs. The district court held that the issue was moot because it would not impact the Guidelines range or the sentence and declined to resolve Lloyd's challenge to the enhancement. We agree that the issue is moot. See McCarther, 596 F.3d at 445.

## III.

Accordingly, we affirm the convictions and sentences for Douglas Meeks and Lloyd Meeks.

_____