# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———

No. 11-1391

———

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| B.A.D., | * | |
| | * | |
| Appellant. | * | |

———

Submitted: June 14, 2011
Filed: August 1, 2011

———

Before COLLOTON, CLEVENGER,[1] and BENTON, Circuit Judges.

———

CLEVENGER, Circuit Judge.

———

[1]The Honorable Raymond C. Clevenger, III, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

Defendant B.A.D.[2] appeals his juvenile delinquency conviction on two counts of aggravated sexual assault. At trial before the district court,[3] the victim failed to identify B.A.D. as the perpetrator. The victim did, however, provide other testimony concerning the crimes, as did other members of the family (B.A.D. is the victim's uncle). B.A.D., pointing to the failed in-court identification, contends that his conviction lacked sufficient supporting evidence. We disagree, and therefore affirm the district court.

I

The charged conduct in this case occurred around September 2009. At that time, B.A.D. was 16 years old. He was a member of the Cheyenne River Sioux Tribe, and he lived with his father R.D. on the Lower Brule Indian Reservation.[4]

J.D. is B.A.D.'s nephew,[5] and was four years old at the time of the charged conduct. According to the government, B.A.D. engaged in at least two sexual acts

---

[2]The defendant and the victim in this case are juveniles and members of the same extended family. To protect their privacy, this opinion refers to the defendant, victim, and other family members by initials only. See 18 U.S.C. § 3509(d).

[3]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

[4]The parties stipulated that B.A.D. is an Indian, that the place where the conduct is alleged to have taken place is in Indian country, and that B.A.D. was a juvenile at the time. Neither party disputes that these stipulations satisfy the prerequisites for B.A.D.'s prosecution by the United States as a juvenile delinquent. 18 U.S.C. §§ 1153 ("Offenses committed within Indian country"), 5032 ("Delinquency proceedings in district courts").

[5]Technically, J.D. is B.A.D.'s half-nephew. As discussed infra, however, the uncontested trial testimony was that within the family B.A.D. was referred to as J.D.'s uncle, and this opinion adopts that usage.

(specifically, oral sex and anal sex) with J.D. around this time. On September 2, 2010, the government charged B.A.D. by juvenile information with two counts of aggravated sexual assault. See 18 U.S.C. §§ 2241(c), 2246(2)(A), (2)(B).

B.A.D. pled not guilty and the case proceeded to an adjudicatory hearing. The court heard testimony from, among others, the victim J.D., who by this time was five years old; the victim's mother D.D., who is B.A.D.'s half-sister; R.D., father of B.A.D. and grandfather of the victim J.D.; and C.D., R.D.'s wife and B.A.D.'s mother. Trial Tr., United States v. B.A.D., No. CR 10-30074, Dkt. #53 (D.S.D. Feb. 23, 2011) (trial held Dec. 21, 2010) [hereinafter Trial Tr.].

The victim's mother D.D. was the government's first witness. She described the family relationships discussed above, and laid out how her half-brother B.A.D. lived with their common father R.D. D.D. also testified that she regularly left her son, the victim J.D., at R.D.'s house to be cared for while D.D. attended night classes at a local community college. Id. 20:7–21:18. D.D. testified that she was giving J.D. a shower in late September 2009 when she noticed redness on J.D.'s penis and around his anus. She also testified that she had a conversation that night with J.D., after which she came to believe that J.D. had been the victim of sexual assault. Id. 21:19–25:24.

The victim J.D. also testified. In response to the government attorney's questions, J.D. testified that he knew a person named "Uncle [B.],"[6] and described "Uncle [B.]" as "A guy that has been mean to me." Id. 52:21–25. The government attorney asked J.D. if "Uncle [B.]" was in the courtroom, and J.D. said he was not:

---

[6]"Uncle B.'s" first name is that of the defendant B.A.D.

Q:    [I]s this person that you just said was mean to you, your Uncle [B.], is he here in the room with us today?

A:    No.

Q:    Okay. What I want you to do is look around the room and see everybody and tell me if your Uncle [B.] is in this room.

A:    Nope.

Q:    Okay. You don't see him?

A:    Nope.

Q:    Okay. Do me a favor and stand up so you are big and tall.

A:    (Complies.)

. . .

Q:    Do you see this guy sitting here?

A:    Yes.

Q:    In the green shirt?

A:    Yes.

Q:    Do you know who that is?

A:    Nope.

Q:    That's not your Uncle [B.]?

A:    Nope.

Trial Tr. 53:1–54:1.

J.D. went on to describe in detail two sexual assaults upon him by "Uncle [B.]" at a location near where B.A.D. lived with his father. J.D. stated that he did not immediately tell his mother about the assaults because "Uncle B." instructed him not to — as recounted by J.D., "Uncle B.'s" words were "Don't tell her." Id. 54–63.

The government also called to the stand Renette Kroupa, an employee at the nearby Indian Health Service clinic who performed a forensic interview and forensic examination of J.D. in October 2009. Ms. Kroupa testified that on her examination of J.D. she discovered a "small fissure" around J.D.'s anus. She acknowledged that this was not the extent of damage a layperson might expect for a victim in these circumstances, but pointed out that nearly a month had passed between the reported incident and her examination. Ms. Kroupa testified that injuries of the type commonly incurred in sexual abuse cases involving anal penetration can heal quickly, especially for small children. On cross-examination, Ms. Kroupa acknowledged that she was unable to draw from her physical examination of J.D. any conclusions about whether he had been sexually abused. Id. 66–86.

The defense called B.A.D.'s father R.D. to testify. After first testifying that he never left the defendant B.A.D. alone with J.D., on cross-examination R.D. acknowledged that due to his own health problems, R.D. might have been unaware if the two had been alone and unsupervised for some period of time. See id. 112–16. At the end of R.D.'s testimony, the district court questioned him directly:

Q:     To your knowledge, is there any other family member of [J.D.] whose name is [B.], besides your son, [B.A.D.]?

A:     Not that I know of.

Q:     When [J.D.] was in your household with your son [B.A.D.], by what name did [J.D.] call your son?

A:     Uncle [B.]

Id. 117:4–10. R.D. also testified that he was unaware of any instances where J.D. exhibited confusion about who "Uncle B." was. Id. 119–20.

Finally, the defense called C.D., B.A.D.'s mother. Again questioned by the court, C.D. testified that J.D. called her son B.A.D. "Uncle B." She also testified that there had not been major changes to B.A.D.'s appearance since the time of the charged assaults. Id. 151–52.

Following the hearing, the court held that, while "it [was] a very close call on these facts," the government had proved B.A.D.'s guilt beyond a reasonable doubt. Findings, United States v. B.A.D., No. CR 10-30074, Dkt. #41, at 7 (D.S.D. Jan. 4, 2011) [hereinafter Findings]. It sentenced him to twelve months incarceration and four years of juvenile delinquency supervision. B.A.D. timely appealed. This court has jurisdiction to review final judgments of the U.S. District Court for the District of South Dakota. 28 U.S.C. §§ 41, 1291, 1294.

II

A

This court reviews the factual findings of a district court in a juvenile delinquency case for clear error, and accords deference to the court's credibility determinations. United States v. L.B.G., 131 F.3d 1276, 1278 (8th Cir. 1997). To

determine the sufficiency of the evidence supporting a criminal conviction, this court must "look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict." United States v. Black Cloud, 101 F.3d 1258, 1263 (8th Cir. 1996) (citations omitted). We avoid weighing the evidence or assessing the credibility of witnesses. United States v. Meeks, 639 F.3d 522, 527 (8th Cir. Apr. 12, 2011). Reversal is warranted only if no reasonable fact finder could have found guilt beyond a reasonable doubt. Id.

B

B.A.D. contends that J.D.'s refusal to positively identify B.A.D. as the perpetrator created ipso facto reasonable doubt as to B.A.D.'s guilt, and thus renders the district court's judgment unsupported by the evidence. B.A.D. notes the paucity of physical evidence connecting him to the crime, noting that the primary evidence against him is J.D.'s testimony that the perpetrator was "Uncle B." B.A.D. argues that this testimony is contradicted by J.D.'s refusal to identify B.A.D. as "Uncle B." in court, so automatically raising a reasonable doubt as to B.A.D.'s guilt.

The presence of facial contradictions in a witness's testimony is not itself necessarily grounds for reversal. To the contrary, the resolution of such contradictions is the sole province of the trial fact-finder. See United States v. Honarvar, 477 F.3d 999, 1000 (8th Cir. 2007). It is beyond doubt that the judge in this case was privileged to determine that one part of any witness's testimony was credible while another part was not. Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985); Kohl ex rel. Kohl v. Woodhaven Learning Ctr., 865 F.3d 930, 943 (8th Cir. 1989) ("This proposition is so basic, it hardly needs citation."). Only if the credited story were "so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it" would an appellate court upset a trial determination of what testimony was true and what was not. United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995). Witness credibility is "quintessentially a

judgment call and virtually unassailable on appeal." United States v. Sicaros-Quintero, 557 F.3d 579, 582 (8th Cir. 2009).

We therefore turn to the district court's findings. A court conducting a bench trial is obliged to make fact findings sufficient to enable appellate review of the basis for its decision. King v. United States, 553 F.3d 1156, 1161 (8th Cir. 2009); see also Fed. R. Civ. P. 52(a). It is not necessary for the court to make a specific finding on every fact. So long as the findings "afford a reviewing court a clear understanding of the basis of the trial court's decision," they are sufficient. Allied Van Lines, Inc. v. Small Bus. Admin., 667 F.2d 751, 753 (8th Cir. 1982) (internal quote marks omitted).

The district court's findings meet that standard and demonstrate that B.A.D.'s conviction was based in part on the court disbelieving J.D.'s testimony that "Uncle B." was not in the courtroom. While the findings do not expressly state that the trial judge discredited J.D.'s failure to identify B.A.D., they make clear that the court credited the other evidence of B.A.D.'s guilt over the failed identification:

> 31. The evidence establishes that there is only one Uncle [B.] in [J.D.]'s life. That one Uncle [B.] is the Defendant. The testimony was that [J.D.] does not mistake other people for Uncle [B.] [B.A.D.] lives across the street from the place where [J.D.] testified that "Uncle [B.]" placed his penis in [J.D.]'s mouth and his penis in [J.D.]'s anus.
>
> . . .
>
> 33. Although it is a very close call on these facts, the Government has met its burden of proof beyond a reasonable doubt on each of the elements of the offense charged.

Findings at 7. Reading these findings in the context of J.D.'s inability to identify B.A.D. in court inexorably leads to the conclusion that the trial judge did not credit that failed identification as proof of B.A.D.'s innocence.

We find nothing in the record to suggest that this credibility determination was so erroneous as to merit reversal. To the contrary, a reasonable fact-finder could have believed that J.D., a five year-old recounting a sexual attack occurring over a year before and about which his attacker had told him not to share any details, merely balked at specifically identifying his attacker in court. J.D.'s failure to identify B.A.D. could therefore reasonably have been disbelieved, while the remainder of his testimony was given weight. In this context, we owe deference to that credibility determination, and we will not upset it. Heath, 58 F.3d at 1275.

Combining this credibility assessment with the other evidence in the record—e.g., J.D.'s identification of "Uncle B." as his molester, the uncontested testimony that B.A.D. was known to J.D. as "Uncle B.," uncontested evidence of B.A.D.'s access to J.D., evidence that B.A.D. could have isolated J.D. from adult supervision, and the close proximity of B.A.D.'s residence to the place where J.D. said he was assaulted—we find B.A.D.'s conviction supported by sufficient evidence. In other words, it was within the capacity of a reasonable fact-finder to find B.A.D. guilty on this evidence. L.B.G., 131 F.3d at 1278. Accordingly, we affirm.

———————