# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1282

_____

United States of America

*Plaintiff - Appellee*

v.

Frank Ray Gallardo

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: March 13, 2020
Filed: August 17, 2020

_____

Before ERICKSON, GRASZ, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

A jury convicted Frank Gallardo, also known as Frank Ray Thunder Hawk, of two counts of Abusive Sexual Contact involving a child less than 12 years-old. *See*

18 U.S.C. §§ 2244(a)(5), 2246(3), & 1152. The district court[1] imposed two consecutive 36-month sentences for a total of 72 months in prison. Gallardo[2] claims that the district court erred by (1) denying his motion that the evidence was insufficient, (2) admitting hearsay through a forensic interviewer's testimony, (3) failing to instruct the jury on specific intent, (4) failing to grant a mistrial because members of the public wore clothing that improperly influenced the jury, (5) denying his motion to dismiss the indictment for violating his Speedy Trial Act rights, (6) violating his right to testify in his own defense, and (7) failing to grant a new trial because the indictment did not identify him as an Indian. We affirm.

I.

Gallardo lived with A.B. and her mother on a cattle ranch. The first incident leading to this case occurred when A.B. accompanied Gallardo to feed cattle from a tractor. Gallardo let her drive the tractor and told her that sitting on his lap would make it easier to drive. A.B. said that he did "something" and her "private was touched by [Gallardo's] private" through their clothing. 8/30/2016 Tr. at 36:9–12. She also made clear she understood that a boy's "private" is a penis. Afterwards, she felt that she "couldn't be by him anymore." *Id.* at 36:13–18.

The second incident occurred shortly after that, when A.B., Gallardo, and her mother were all on the couch watching television. *Id.* at 40:2–6. When her mother left for the restroom, A.B. testified that Gallardo touched her genitalia with his hand, *id.* at 36:24–37:21, *as corrected by* D. Ct. Dkt. 189 at 14 n.4, and that he only stopped because her "mom returned from the bathroom," *id.* at 37:19–21. Throughout her

---

[1] The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

[2] Despite claiming that the Defendant's name is listed incorrectly on the indictment, Defendant's counsel refers to him as "Gallardo," so we will as well.

trial testimony about the two incidents, A.B. declined to answer many questions and typically gave short or one-word responses.

Attempting to provide more detail about these encounters, the Government offered the testimony of Brandi Tonkel, a forensic interviewer, who had met with A.B. before trial. Over Gallardo's objection, she testified that A.B. said Gallardo had inappropriately touched A.B. on two occasions. In describing the tractor incident, A.B. told her that Gallardo put his "middle in her behind." 8/30/2016 Tr. 180:23–181:2. For the couch incident, Tonkel explained that A.B. indicated Gallardo touched her middle or vaginal area with his hands. *Id.* at 184:5–13. Tonkel also related how A.B. identified parts of anatomical diagrams during the forensic interview.

The district court denied Gallardo's motion for acquittal, and a jury convicted him. He timely appeals.

## II.

We review the district court's denial of a motion for acquittal *de novo*. *United States v. Griffith*, 786 F.3d 1098, 1102 (8th Cir. 2015). We will affirm unless, viewing the evidence in the light most favorable to the Government and accepting all reasonable inferences in favor of the verdict, no reasonable jury could have found Gallardo guilty beyond a reasonable doubt. *United States v. Bynum*, 669 F.3d 880, 883 (8th Cir. 2012). The essential elements of abusive sexual contact, as alleged against Gallardo, are that: (1) he knowingly and intentionally engaged in sexual contact with a person; (2) the sexual contact was an intentional touching through the clothing of the genitalia, groin, inner thigh, or buttocks of the victim with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; (3) the victim was under the age of 12; (4) the victim is an Indian; and (5) he committed the act in Indian country. 18 U.S.C. §§ 2244(a)(5), 2246(3), & 1152.

Gallardo only argues that the evidence failed to show "an intentional touching with intent to gratify the sexual desire of the person touching." Gallardo Br. 7. Specifically, he claims that the jury could not convict on the testimony of A.B. and her mother alone because defense witnesses testified that they were untruthful. He also argues that A.B. told Tonkel "nothing more than what she said on direct examination." *Id.* at 8.

Without considering the statements A.B. made to Tonkel, the evidence was sufficient to sustain Gallardo's conviction. A.B. testified that Gallardo's penis touched her "private" through their clothing on the tractor and Gallardo's hand touched her "private" when they were alone on the couch. This is enough to prove intent because "the contact alleged is so clearly sexual that the jury may infer the defendant's intent." *United States v. Hollow Horn*, 523 F.3d 882, 891 (8th Cir. 2008). Gallardo's attacks on the witnesses' credibility and truthfulness are questions for the jury, and we will not second guess them. *United States v. Brown*, 422 F.3d 689, 692 (8th Cir. 2005). The district court did not err in denying the motion for acquittal.

## III.

We review Gallardo's hearsay challenge to Tonkel's testimony relaying A.B.'s statements for an abuse of discretion. *United States v. W.B.*, 452 F.3d 1002, 1005 (8th Cir. 2006). Gallardo argues that the testimony is inadmissible under the residual hearsay exception in Federal Rule of Evidence 807(b) because (1) there was no written notice, (2) there was no need for Tonkel's testimony because A.B. testified, and (3) the substantive requirements of Rule 807(b) were not met.

The residual hearsay exception is to be used "rarely, and only in exceptional circumstances" that "generally exist when a child sexual abuse victim relates the details of the abusive events to an adult." *United States v. Peneaux*, 432 F.3d 882, 893 (8th Cir. 2005) (citation omitted). We have upheld the admission of this

testimony when the victim gave inconsistent testimony, *id.* at 887–88, recanted, *United States v. Renville*, 779 F.2d 430, 441 (8th Cir. 1985), or "was unable or unwilling to recall specific details regarding the abuse during her in-court testimony," *W.B.*, 452 F.3d at 1006. This case is a close call because A.B. testified to some details of the sexual contact but was also unresponsive to many questions. We also find it troubling that the Government failed to file a notice stating it would admit A.B.'s statements through Tonkel, as it did in *Peneaux*, even though defense counsel requested Rule 807(b) information twice. D. Ct. Dkt. 28, 64.

Even assuming that the district court abused its discretion in admitting Tonkel's testimony, any error was harmless. *United States v. Gabe*, 237 F.3d 954, 958 (8th Cir. 2001). "An evidentiary error is harmless if the substantial rights of the defendant were unaffected and the error did not influence or had only a slight influence on the verdict." *Peneaux*, 432 F.3d at 894. In reviewing the transcripts, we agree with Gallardo that "Tonkel did not say any more about what happened in the tractor or on the couch than [the] victim set out in her direct testimony." Gallardo Br. 12. Tonkel's testimony on these points was generally cumulative—A.B. identified her abuser and related enough facts to convict Gallardo. Although not all cumulative hearsay is harmless, we do not think Tonkel's use of proper anatomical terms influenced the jury or bolstered the credibility of a young child who described, with difficulty, her abuse to the jury.

## IV.

Gallardo also argues that the district court erred by failing to give the jury an instruction that "there must exist in the mind of the defendant the specific intent to abuse . . . the alleged victim or to arouse and gratify the defendant's sexual desire." Gallardo Br. 14. "[W]e review jury instructions for an abuse of discretion, and will affirm the district court if the instructions, as a whole, sufficiently submit the issues to the jury." *United States v. Rush-Richardson*, 574 F.3d 906, 910 (8th Cir. 2009).

-5-

"Unless used in the statute itself or unless the crime falls within that rare type of offense where defendant's knowledge that he is violating the law is an element of the offense, there is no occasion for an instruction defining specific intent." *United States v. Sweet*, 985 F.2d 443, 444–45 (8th Cir. 1993) (cleaned up and citation omitted). And, "[f]ailure to give a requested instruction is not erroneous if the court's charge, as a whole, correctly instructs the jury on the applicable law." *United States v. Little Dog*, 398 F.3d 1032, 1038 (8th Cir. 2005). Here, the jury was properly instructed on the law and had to find that Gallardo "intended to engage in the offense," "voluntarily and intentionally" caused sexual contact, and that contact was "an intentional touching . . . with an intent to" commit the act. 8/30/2018 Tr. 6:14–7:12; 18 U.S.C. §§ 2244(a)(5), 2246(3), & 1152. We find no error.

V.

Gallardo next claims that the court should have granted a mistrial because he was deprived of his Sixth Amendment right to an impartial jury. Specifically, he argues that the presence of "a group of motorcycle bikers wearing vests saying 'Bikers Against Child Abuse'" deprived him of a fair trial. Gallardo Br. 17.

On the first day of trial, there were members of the public in the courthouse wearing the biker vests. Some were "guarding the doors of the courtroom," accompanying the victim to the public restroom, and visible in other public spaces of the building. 8/30/18 Tr. 153:21–158:4. One biker sat in the front row during Tonkel's testimony, but defense counsel notified the court that she did not see a "juror recognizing her label" and she did not know if anyone saw "Bikers Against Child Abuse." *Id.* 153:24–154:3.

The court took protective measures and noted it would "not permit somebody to start wearing inflammatory insignias." *Id.* at 154:13–14. After consulting with Gallardo, defense counsel moved to "ask if [the jury pool] ha[s] seen this, and at that point depending on the information I receive, I may move for a mistrial." *Id.* at

159:10–13. When the court proposed a curative instruction to the jury, defense counsel objected and stated she would agree to the court "ask[ing] a general question en masse, if that's the Court's protocol, and if no one raises their hand, we can move on." *Id.* at 168:10–16. The parties and the court agreed on the question, and when no juror indicated they had seen anyone "wearing regalia bearing a signature or message that they belong to a certain group," the trial proceeded without further objection or motion. *Id.* at 172:14–22.

Because Gallardo did not move for a mistrial, we assume that plain error review applies. *United States v. Meeks*, 639 F.3d 522, 526 (8th Cir. 2011). To prevail, a defendant "must show that the court committed an error that was plain, that affected his substantial rights, and that seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 527 (citation omitted). An error is plain if it is clear or obvious. *United States v. Olano*, 507 U.S. 725, 734 (1993). We cannot correct an error unless the error is clear under current law. *Id.*

Gallardo's alleged error does not satisfy plain error because "the effect on a defendant's fair-trial rights of the spectator conduct to which [he] objects is an open question." *Carey v. Musladin*, 549 U.S. 70, 76 (2006). The Supreme Court "has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial," *id.*, and neither party cites, nor are we aware of, a case that answers that question. Additionally, we generally analyze "outside intrusions upon the jury for prejudicial impact," *Olano*, 507 U.S. at 738, and there is no record evidence of any impact here.

## VI.

Gallardo's remaining fair trial claims either amount to ineffective assistance of counsel claims that are best raised on collateral review or are meritless.

Gallardo argues that his signature on a speedy trial waiver had been forged, and therefore, his Speedy Trial Act rights were violated. Gallardo Br. 15. The waiver was attached to trial counsel's motion for a continuance because "counsel needed additional time to locate witnesses to complete the investigation in this matter and to prepare for trial." D. Ct. Dkt. 189 at 36 (citation omitted). The district court investigated this claim and required trial counsel to submit an affidavit. Counsel stated that during a prison visit she discussed the Speedy Trial Act with Gallardo and that he signed the waiver. Patterson Aff., D. Ct. Dkt. 187-2. She swore that she went back to her office and filed the now-contested waiver. *Id.*

Gallardo also claims that he wanted to testify in his own defense, but his trial attorney prevented him. Gallardo Br. 18. The record, as developed here, does not support this claim. Gallardo was present when the court recessed for trial counsel to advise him on his right to testify, and the defense rested when the proceedings resumed. 8/31/2016 Tr. 256:6–21. Without some affirmative act by the defendant, we have held that a "knowing and voluntary waiver of the right may be found based on a defendant's silence when his counsel rests without calling him to testify." *Frey v. Schuetzle*, 151 F.3d 893, 898 (8th Cir. 1998).

These two issues call into question trial counsel's adequacy and need further record development. "[W]e generally defer such claims to collateral review under 28 U.S.C. § 2255, excepting cases where the obvious result would be a plain miscarriage of justice or inconsistent with substantial justice." *United States v. Cooke*, 853 F.3d 464, 474 (8th Cir. 2017). Because there is no miscarriage of justice here, we decline to reach these issues.

Finally, Gallardo argues that the indictment was defective and deprived the court of jurisdiction because he is an Indian and 18 U.S.C. § 1152 does not apply to offenses committed by one Indian against the person or property of another Indian. Gallardo Br. 19. The district court correctly rejected this claim. Gallardo admitted in the district court that "he should have been charged under [18 U.S.C. §] 1153" as

that provision brings certain offenses committed by Indians under the district court's jurisdiction. D. Ct. Dkt. 189 at 29 (bracket in original). The district court had the power to try Gallardo, whether or not he is an Indian, because the "matter of jurisdiction has to do only with the court's statutory or constitutional power to adjudicate the case." *United States v. White Horse*, 316 F.3d 769, 772 (8th Cir. 2003) (citation omitted). To the extent the omission of his alleged Indian status implicates the sufficiency of the evidence submitted to the jury, he was convicted of a federal offense that applies to Indians and non-Indians alike, and his claims that he is an Indian means "he has suffered no prejudice from the fact that he might have been charged and convicted under the wrong statutory section." *Id.* at 773.

VII.

The judgment of the district court is affirmed.

_____